GLADNEY, Judge.
This is an action in tort by Mrs. Bessie H. Bond, surviving spouse of Thomas J. Bond, who sustained a fatal injury in a traffic accident in Bastrop, Louisiana, on December 13, 1957. Made defendants are *707 Christopher Columbus Spillers and his liability insurer, State Farm Mutual Automobile Insurance Company. After trial, judgment was rendered rejecting the demands of plaintiff, hence this appeal.
On the above mentioned date at about 6:00 o’clock p. m., after dark, a head-on collision occurred between a Plymouth automobile being driven by Bond in a southerly direction, and a Chevrolet operated by Spillers, and being driven in a northerly direction. Both vehicles were traveling on North Washington Street. The latter thoroughfare is one of the principal streets of Bastrop and is subjected to a good deal of traffic. At the place of impact of the two vehicles the street is paved with a concrete strip eighteen feet in width. The accident took place between the intersection of Parkhurst and Highland Avenues, which run parallel to one another and intersect North Washington, but do not continue eastward after their intersection. Between Parkhurst and Highland the shoulder on the east side of North Washington Street is graveled, level with the surface of the pavement, and is eight feet or more in width. The two vehicles collided opposite and near a driveway located on the west side of the street leading to the residence of Mrs. Addie Mae White at 1227 North Washington Street. The locus of the collision was determined as being approximately ninety-four feet south of Park-hurst Avenue and in the west half of the paved concrete strip. The atmosphere was clear and vehicles traveling the street had turned on their lights.
Both drivers were unaccompanied. Bond received injuries to his chest which rendered him instantly unconscious and his death occurred while the ambulance was en route to a hospital. Spillers was not injured. There were no eyewitnesses to the accident other than Spillers and Bond. Evidence relating to the issue of negligence, therefore, consists of Spillers’ version of the accident and the physical evidence that has been adduced upon the trial such as photographs of the locale, the nature of the damage inflicted upon the two automobiles, skid marks, the positions of the two automobiles at rest following the collision, and other findings of a similar nature.
Spillers testified he was not working on the day of the accident and in the afternoon about 4:00 o’clock he went to a cafe on East Cypress Street in Bastrop, where he remained for some time and ate his supper there. Before leaving he made a telephone call to Mrs. Addie Mae White during which he informed her that he would drop by. No particular time for the visit was specified. The defendant left the cafe, proceeded west along East Cypress Street to its intersection with North Washington and turned north on said street. He testified that upon nearing the vicinity of the accident he was passing a Piggly-Wiggly store when a woman driver ahead of him, also driving north, signaled for a left-hand turn into Fairfield Avenue. While waiting for this motorist to make her turn he slackened the speed of his vehicle and then proceeded north; that when he was about two hundred feet north of Parkhurst Avenue he noticed a car meeting him which appeared to turn right then turned back to the left, and came at an angle toward him and he thought there would be a head-on collision; and that at the speed he was going it looked as though the best thing for him to do was to make a quick turn to the left, which he did and the collision occurred. Spillers stated that at that time he was operating his car at a speed of about fifteen miles per hour and he estimated the speed of the Bond car at from twenty-five to thirty miles per hour.
Shortly after the accident, Lt. Roy Riels of the Bastrop Police force, James El-dridge, a state highway officer, and Stanley Williams, also a member of the Bas-trop Police force, separately arrived at the scene. These witnesses testified with reference to their investigation of the accident. Also appearing as witnesses were *708 J. B. Golden, who drove the ambulance which took Bond to the hospital, and J. C. McDonald, a citizen who arrived at the place of the collision while the officers were making their investigation.
Appellant’s theory of the accident is that Spillers was proceeding to the residence of Mrs. White and was attempting to make a left turn into the driveway leading to the residence at a time when it was unsafe to do so; and that this is shown by the physical evidence which discloses Spillers’ car was headed into the driveway when the impact between the two vehicles occurred in Bond’s proper lane of travel. Further, it is argued the burden of proof rested on Spillers to exonerate himself from actionable negligence. Appellant’s counsel also urge the trial judge was manifestly in error in predicating the judgment rejecting plaintiff’s demands on the failure of plaintiff to sustain the burden of proof, when, in fact, the burden of proof rested on Spillers.
Appellees’ attorneys seek to sustain the judgment by arguing the burden of proof rested upon plaintiff to show by a preponderance of the evidence Spillers was 'guilty of negligence; that the testimony .of Spillers was not refuted and must be accepted over the circumstantial evidence relied upon by appellant. Appellees also argue the application of the doctrine of imminent peril and alternatively assert a special plea of contributory negligence on the part of Bond should be sustained.
At the outset of our discussion of the salient facts upon which the outcome of this case depends, we express a resolution that the burden of proof in this case does not rest upon the plaintiff, but, in fact, rests on the defendant. This conclusion flows from the mere fact the evidence conclusively establishes Spillers had turned his vehicle to the left and a substantial portion of his automobile was across the medial line of the pavement and in Bond’s lane of travel when the collision occurred. It is now well recognized by our appellate courts that where the primary cause of an accident is the act of a motorist in driving his car into that part of the highway reserved exclusively for traffic proceeding from the opposite direction, a mere statement of the accident makes out a prima facie case of negligence against the motorist. It is then incumbent upon him to show by clear and concrete evidence the sudden presence in the wrong traffic lane was due to unexpected and unforeseen circumstances over which he had no control, and that he did not in any particular contribute to the mishap. Noland v. Liberty Mutual Insurance Company, 1957, 232 La. 569, 94 So.2d 671; Cormier v. Southern Farm Bureau Casualty Insurance Company, La.App.1957, 94 So.2d 901; Rizley v. Cutrer, 1957, 232 La. 655, 95 So. 2d 139; Le Bourgeois v. Indiana Lumbermens Mutual Insurance Company, La.App. 1958, 101 So.2d 720.
Another factor we are compelled to carefully examine is the credibility to be accorded the testimony of Spillers. If Spil-lers’ explanation is acceptable as being truthful, the tragedy which befell Bond may not be attributed to the fault of Spil-lers, and by the same token, if the explanation of Spillers is unreasonable and inconsistent with other and controlling facts connected with the collision, then we must reject the testimony of Spillers as being unsatisfactory. Reduced to a simple equation, the question to be decided is whether Spillers was engaged in making an unsafe left turn at the time of the collision, or whether he was intending to continue past the driveway of Mrs. White and was confronted with an emergency created by Bond crossing into his traffic lane. The answer, of course, must be found in the reported evidence of the trial.
On the trial of the case appellant presented evidence to show the positions of the vehicles as related to each other at the moment of impact; the positions of the vehicles with reference to the concrete slab at the moment of impact; the posi *709 tions of the vehicles at rest following the collision with reference to the driveway entering Mrs. White’s premises, and with reference to the concrete slab; and, the location of skid marks made by Bond’s car. The development of this evidence has importance bearing upon our decision as to whether Spillers was engaged in the act of driving into Mrs. White’s driveway at the time of the collision and the direction and course of Bond’s vehicle immediately prior to its contact with Spillers’ automobile.
The positions of the two vehicles at the moment of the collision must be inferred from photographs of the two damaged automobiles. Reference to the pictures of the Bond car indicate it received a blow which bent the middle of the front bumper in and thrust the front grillwork and radiator backward and toward its right. Neither of the front headlights was seriously damaged. Pictures show clearly the right front portion of Spillers’ Chevrolet car severely damaged at a point which indicated its right front corner of the fender at the front headlight and front portion of the bumper first made contact with the Bond vehicle. There was no evidence of damage to the entire left front side of Spillers’ car. The photographs compel an inference these two vehicles made contact while the Spillers car was turning to its left at a forty-five degree or greater angle.
The evidence does not exactly fix the place of impact upon the west half of the pavement. Spillers testified he thought it occurred near the center line. McDonald testified he observed debris mostly on the west half of the paved slab. No evidence was offered which would indicate the impact occurred other than in Bond’s lane of travel and Spillers does not dispute this fact.
After the cars came to rest, testimony as to their location was given by Lt. Roy Riels, Officer James Eldridge, and J. B. Golden. Undeniably, this testimony establishes the Spillers vehicle came to a stop facing directly across the pavement headed in a westerly direction, and within the driveway of Mrs. White. These witnesses testified the front wheels of the Chevrolet were a foot or so off the west side of the pavement. The Bond vehicle facing south was in contact with the Chevrolet with its right wheels several inches off of the pavement. Other evidence reflects certain skid marks were made by the Bond car. These tire marks made by the right wheels were about eight feet long. One started thirteen inches from the west edge of the pavement and veered southerly to the right and ended four or five inches from the west edge of the pavement. The skid marks ended almost at the northernmost edge of the White driveway. El-dridge testified the skid marks were some two feet north of and about two feet east of where the front wheels of the Bond vehicle came to rest. Counsel for appel-lees earnestly insists that the marks were not made by the Bond car and point out some confusion in the testimony of Riels, Eldridge and Williams. Despite the attack upon this testimony which disclosed some inaccuracies in the testimony of Eldridge particularly, the evidence in its entirety has satisfied us the tire marks were made by the Bond automobile and we are convinced Bond applied his brakes while driving southerly close to the right side of his lane of travel and his car was veering only slightly to his right at the moment of the collision. The testimony also shows without contradiction the force of the Spil-lers car caused Bond’s vehicle after the impact, to be pushed about two feet toward the west.
Without further belaboring these issues, we find that they clearly show Spillers had almost, but not quite, completed a left turn at an angle of about ninety degrees at the moment of impact, at a time after the wheels of the Bond vehicle had been braked and the tires thereof were skidding in a straight line close to the west edge of- the concrete slab.
*710 The foregoing evidence would of itself be sufficient to justify our conclusion Spil-lers was engaged in and, in fact, had almost completed his turn into the driveway of Mrs. White when struck by the automobile driven by the deceased. The testimony of Spillers, however, attempts to prove that he was not, in fact, driving into Mrs. White’s driveway, but was proceeding north when confronted with an emergency created by Bond driving at an angle directly toward him, and he was impelled to turn left in the hope of avoiding a head-on collision.
That Spillers intended to visit Mrs. White at 1227 North Washington Street is admitted, but no definite time therefor had been agreed upon. Mrs. White was not at home at the moment the accident occurred but arrived there later. Spillers testified he had no intention of visiting Mrs. White at that time, but was on his way farther north for the purpose of trying to make a sale of a 38 pistol to Richard Hampton. The latter testified he had considered buying the pistol. We do not think this defense, in the nature of an alibi, of particular importance and certainly not sufficient to overcome the fact that Spillers’ vehicle had practically entered the driveway of Mrs. White at the time of the collision.
Deserving of further attention is Spil-lers’ testimony wherein he details the emergency created and tells of his decision to turn left as the most opportune method of avoiding a head-on collision. Photographs found in the record make plain that the east shoulder of North Washington Street between Highland and Parkhurst Avenues is of gravel construction, level with the pavement, and considerably wider than an automobile. Such a shoulder exists all the way from the intersection of Fairfield Avenue to Parkhurst Avenue. Testifying, Spillers said that he first noticed the lights of Bond’s car when it appeared to be swerving to the right and thereafter it turned to the left and angled toward him; that in order to see if Bond was in his traffic lane, he said he “glanced down to see if I could see the white line, and from his headlights the front wheel was over the white line at that time;” and that he had already started toward the right, had felt his wheels ease off of the hard surface, and had straightened back on the hard surface. He then testified that sensing a head-on collision was near and that at the speed he was traveling he could not pull to the right and get out of the way of the oncoming vehicle, he thought the best thing to do would be to make a quick turn to the left so he leaned out of his window and glanced back to see if there was any other car attempting to pass or any gleam of light that was crowding him before he turned. He testified further: “As I looked back, I just cut as deep as I could.” We confess we have some reservations as to whether the operator of the Chevrolet automobile could within the limited time and space accorded to him in such an emergency, go through all the maneuvers he said he did. He was thoroughly familiar with the terrain to his right, and we can find no reason why if in danger he did not move farther toward his right onto the broad east shoulder of the highway. It is also difficult to reconcile Spillers’ testimony with the course of Bond’s vehicle. Spillers never testified Bond ever came more than a short distance over the white line and this is hardly consistent with the position and skid marks of the Bond vehicle after the accident. The circumstances as above related do not impress us with the testimony of Spillers that he was not endeavoring to enter the driveway of Mrs. White. Nor do we see how a reasonable person could have selected as his choice a left turn rather than a turn to the right in order to avoid what he said was an emergency. For these reasons we are of the opinion that Spillers was engaged in making a left turn at a time when it was unsafe to do so, and such a maneuver was the sole and proximate cause of the accident.
*711 Counsel for appellees seriously urges in defense of the charges of negligence against Spillers, application of the doctrine of imminent peril and a plea of contributory negligence directed at the driving of the deceased. Both of these defenses must be rejected in view of our finding that the testimony of Spillers is inconsistent with physical facts which we are of the opinion firmly establish Spillers was deliberately making a left turn into the driveway of Mrs. White when the accident occurred.
Upon trial of the case special damages incurred by plaintiff were established. These consisted of funeral expenses of $871.60 and property damage to the automobile amounting to $560.50.
It was also proven to our satisfaction that decedent, a man of seventy-six and one-half years, and although partially retired, did continue to pursue his electrical profession to the extent that he earned approximately $2,000 per year by doing electrical work for certain customers who gave him their business. Medical testimony disclosed Bond was in unusually good health for a man of his age. Bond’s life expectancy, according to certain standard mortality tables, would be approximately eight years. It would seem reasonable, however, that as Bond became older his earnings would necessarily diminish to some extent. For this reason we are of the opinion $5,-000 would be adequate to indemnify Mrs. Bond for the loss of earnings which reasonably could be expected had this unfortunate accident not have occurred.
Testimony by plaintiff, relatives, friends and Mrs. Bond’s pastor, depicted the deceased as a beloved and respected citizen of his community, a devout church man, considerate and thoughtful of his friends and closely attached to his wife by bonds of love and affection. We realize that loss of such dear companionship cannot be adequately compensated, but in line with our decisions in recent years, we award the sum of Ten Thousand ($10,-000.00) Dollars for mental anguish and plaintiff’s loss of love and companionship.
The evidence does not establish the extent of pain and suffering endured by the deceased before death. The interval was undoubtedly short, but we think it appropriate to allow for this item of damage the sum of One Thousand Five Hundred ($1,500.00) Dollars.
One of the defendants herein is the liability insurer of Spillers. Its liability is limited by the provisions of its policy which provides limits of Five Thousand ($5,000.-00) Dollars for bodily injury or death to one person, and Five Thousand ($5,000.00) Dollars for property damage liability.
It follows that the judgment from which appealed should be and is hereby annulled, reversed and set aside, and it is now ordered that there be judgment in favor of Mrs. Bessie H. Bond and against Christopher Columbus Spillers and State Farm Mutual Automobile Insurance Company, in solido, in the sum of Seventeen Thousand Nine Hundred Thirty-Two and 10/100 ($17,932.10) Dollars, with five per cent (5%) per annum interest thereon from date of judicial demand until paid, subject to a limitation upon the liability of State Farm Mutual Automobile Insurance Company of Five Thousand Five Hundred Sixty and 50/100 ($5,560.50) Dollars, with legal interest thereon from judicial demand.
It is further ordered that the cost of this suit be taxed against appellees.