138 So.2d 837 (1962)
John F. WILSON et al., Plaintiffs-Appellees-Appellants,
v.
Charley KELLY et al., Defendants-Appellants.
No. 9664.
Court of Appeal of Louisiana, Second Circuit.
March 7, 1962.
Rehearing Denied April 4, 1962.
Certiorari Denied May 18, 1962.
*838 McKeithen, Mouser & McKinley, Columbia, Hayes, Harkey & Smith, Monroe, for defendants-appellants.
Davenport, Farr & Kelly, Monroe, for defendant-appellee.
Dhu and Lea S. Thompson, Monroe, for plaintiffs-appellees-appellants.
Before HARDY, GLADNEY and BOLIN, JJ.
BOLIN, Judge.
Defendants appeal from a judgment in favor of plaintiffs in the sum of $10,000 as the result of a head-on collision between a 1956 Ford and a large truck-trailer unit which occurred before daylight on the morning of December 6, 1959, on U. S. Highway 165 near Monroe, Louisiana.
The automobile was owned by John F. Wilson, and was being driven in a southerly direction by his major unmarried daughter, Miss Helen Wilson. Mrs. Dorothy Ottice Wilson, wife of John F. Wilson, was the only other occupant and was riding on the right front seat. This vehicle was insured against public liability and collision by Allstate Insurance Company.
The truck-trailer unit was owned by Cecil Fuller, and was being driven in a northerly direction by his employee, Charley Kelly, who was its only occupant. The operation of this vehicle was insured against public liability by Canal Insurance Company and there was no collision insurance on same.
In the collision, Mrs. Wilson and Miss Helen Wilson were injured and both vehicles badly damaged. Charley Kelly was not injured. From the above accident four suits were filed, which were consolidated both for trial and on appeal. We will, therefore, discuss all cases in this opinion, and think it appropriate at the outset to briefly set forth the parties in each case.
Suit No. 9664 is the instant case. In this action, John F. Wilson seeks recovery for hospital and medical expenses occasioned by his wife's injuries. She seeks damages for her pain, suffering and physical injuries. Made defendants are Allstate Insurance Company, the liability carrier on the Wilson car, and Cecil Fuller and Charley Kelly. The plaintiffs aver the accident was caused by the joint and concurrent negligence of Miss Helen Wilson and Charley Kelly. In the district court, there was judgment for plaintiffs in the amount of $10,000 against Cecil Fuller and Charley Kelly but rejecting their demands against Allstate Insurance Company. Fuller and Kelly have appealed suspensively and the Wilsons have appealed from that part of the judgment rejecting their demands against Allstate Insurance Company.
Number 9665Wilson v. Kelly, Cecil Fuller and Canal Insurance Company, La. App., 138 So.2d 842. The plaintiff seeks damages for her pain, suffering, physical injuries and medical expenses. The lower court awarded her judgment for $750 against all defendants, who have appealed suspensively. Miss Wilson has answered the appeal, seeking an increase in the award.
Number 9666Allstate Insurance Company v. Kelly, Cecil Fuller and Canal Insurance Company, La.App., 138 So.2d 843. This is a subrogation suit by the collision insurance carrier of the Wilson vehicle, seeking recovery of the amount paid to Mr. Wilson under the policy. The lower *839 court awarded plaintiff judgment against all defendants in the amount of $721.60. All defendants suspensively appealed.
Number 9667Fuller v. Allstate Insurance Company, La.App., 138 So.2d 843. In this case, the owner of the truck-trailer unit sued the liability insurance carrier of the Wilson car, seeking recovery of $3,749.07 damages to his truck-trailer unit and an additional $1,200 for loss of use. The district court rendered judgment for defendant and plaintiff perfected a devolutive appeal.
During the trial, the question of quantum was practically eliminated. In suit number 9664, it was stipulated that if judgment was rendered for the plaintiffs against Allstate Insurance Company alone, the judgment would be for $5,000; if judgment was against Cecil Fuller and Charley Kelly, the amount would be $10,000; if judgment was against all defendants, it would be for $4,500 against Allstate Insurance Company and for $9,500 against Charley Kelly and Cecil Fuller.
In suit number 9666, it was stipulated that if Allstate Insurance Company was entitled to recovery, the amount would be $721.60.
It was stipulated in suit number 9667 that the damages to the truck-trailer unit, together with the loss of use thereof, was $4,049.07.
Only in suit number 9665, brought by Miss Helen Wilson, is the amount of damages in dispute.
The accident occurred about 5:45 o'clock a. m., December 6, 1959, approximately 2.3 miles north of the city limits of Monroe, Louisiana, and about 280 feet south of where the main highway is intersected by a road known as "Fink's Hideaway Road". As it was not daylight, it was necessary for the vehicles to be using headlights.
At that point, the highway runs north and south and is straight and level for more than a mile in each direction. The asphalt portion of the road is 24 feet in width, consisting of two traffic lanes with a painted line separating the two lanes. There were firm shoulders several feet wide on each side of the highway, after which the road bed declined sharply into dangerous ditches.
On the day of the collision the weather was clear and the road surface dry. Immediately preceding the accident, the Wilson vehicle was travelling south at a speed of about 55 miles per hour. The Fuller truck-trailer unit was travelling north at a speed of about 35 miles per hour. As the vehicles approached each other, Miss Wilson dimmed the lights on her car and Kelly replied by dimming the lights on the truck. At that point according to Miss Wilson, she thought she saw the truck "angling" over into her lane of traffic, turned to her right, slowed, reached the west shoulder of the highway, travelled one hundred or more feet in a southerly direction, and then, turned hard left, jammed the accelerator down, and crossed the highway directly in the path of the oncoming truck.
The right front fender of the truck struck the right rear of the Wilson car just to the rear of the center post, carried it northerly along the highway, and deposited it near the eastern shoulder of the highway.
At some stage of the collision, the right front wheel of the truck was crushed which broke the hydraulic brake line, after which Kelly had no control over the truck. The truck continued northerly, but bearing to its right, left the highway, turned over and came to rest east of the east edge of the highway, some 450 feet north of the point of impact.
Actually, there are only three witnesses in these cases who could know what occurred immediately prior to and at the moment of the accident. These are Helen Wilson and her mother, Mrs. Dorothy Wilson, who were occupants of the southbound Wilson vehicle, and Kelly, the driver of the northbound Fuller truck-trailer unit. All other witnesses who testified *840 came upon the scene later, or became involved days or even months thereafter.
The testimony of Helen Wilson and Mrs. Wilson is essentially the same which may be summarized as follows. They left their home at Fairbanks, Louisiana, a short time prior to the accident en route to Monroe to pick up a visitor at the bus station. As they travelled south along U. S. Highway 165, and shortly before they reached Fink's Hideaway Road, they observed the approach of headlights some distance south of them; and they thought at first that one vehicle was passing another since the lights appeared to be more in the west or southbound lane of travel. When Helen Wilson dimmed her headlights and Kelly immediately reciprocated, the vehicles were still approximately a mile apart. According to Helen Wilson and her mother, they both got the visual impression from this distance that the oncoming truck was partially in the southbound lane of travel; and Helen Wilson therefore began to slow her vehicle at approximately the time she was passing Fink's Hideaway Road. These ladies both testified that after they had passed the "Deer Crossing" sign (which a plat filed in the records shows to be 189.5 feet south of the center line of Fink's Hideaway Road), the lights of the oncoming vehicle still appeared to be partially in the wrong lane of travel and angling toward the Wilson vehicle.
Seeing this situation develop, Helen Wilson slowed down even more and pulled off to her right so that the right wheels of her vehicle were off the blacktop and onto the west shoulder of the highway. Despite this maneuver, Miss Wilson and her mother both testified the lights of the northbound vehicle continued to occupy a portion of their lane and, judging from the lights shining in their faces, they both reached independent conclusions that the vehicle was still angling toward them and that they would have a head-on collision if the two vehicles continued their courses of travel.
It was at this point, according to the testimony of both ladies, that Helen Wilson sharply and deliberately cut to her left, accelerated her vehicle in the expressed hope of missing the approaching truck by either going off the east embankment or turning back south after the truck had passed. Immediately after she made her turn, her automobile was struck in the center and rear portion of the right side by the front of the oncoming truck. According to both ladies, approximately two-thirds of the truck was in the southbound lane of travel at the time Miss Wilson cut to her left, and it still appeared to be angling toward the Wilson vehicle. Although both these ladies were subjected to rigid cross-examination in an effort to have them specify precise distances, widths, relative locations, etc., it is clear from their testimony they did not know the position of the vehicles with relation to the center line at the instant of impact. When considered as a whole, all they knew was that the northbound truck had substantially obstructed the southbound lane; was continuing to bear down upon them; that a head-on collision appeared imminent; and that Helen Wilson made a drastic but deliberate maneuver in an attempt to escape the imminent peril.
The only other eye witness was Kelly, who testified he was on his right side of the road, saw the approaching car, and dimmed his lights. He stated he saw the Wilson car leave the road on its right side but thought it was pulling over to stop, so he continued. As he almost reached the car, it accelerated, turned and crossed the highway directly in his path. He said he was entirely in his own lane of traffic at the moment and had time only to attempt a sharp left turn and try to apply his brakes before the impact. In so doing, he thinks the left front wheel of his truck may have crossed the center line of the highway some 12 to 18 inches.
Kelly, Fuller and Canal also presented the testimony of G. E. Addison, who was travelling north in a vehicle a mile or *841 more behind the truck. Addison made no special or detailed observation of the scene, though he testified he found marks and debris on both sides of the center line, with the majority of it in the east or northbound lane of travel. He did not specify what the marks and debris were, nor where each was located, but he did state there were some marks along the highway which "looked like where the point of impact might have taken place" and that these marks were "right at the center line".
Other than the damage appraiser whose testimony related to the general damage done to the two vehicles, the only other witness in these cases was Trooper Joe Smith, who arrived sometime after the accident. Based upon his examination at the scene, he arrived at certain conclusions which he testified about over the strenuous objections of opposing counsel. From the debris, the marks on the pavement and other physical facts, he thought the point of impact was from 3 to 6 feet over in the truck's lane of traffic.
As we view this case, it presents entirely a question of fact. We think the law is well settled that a motorist must normally drive his vehicle upon his right half of the road; that if he is involved in an accident in his wrong lane of traffic, there is a prima facie presumption of negligence on his part which burdens him with the necessity of offering sufficient evidence to overcome this initial presumption. LSA-R.S. 32:231, 232; Noland v. Liberty Mutual Ins. Co., 232 La. 569, 94 So.2d 671 (1957); Hunter v. Bedsole and Shetley (La.App. 2 Cir., 1960) 121 So.2d 772; Bond v. Spillers (La.App. 2 Cir., 1958) 107 So.2d 706.
There is an equally well-established rule that a motorist who faces a sudden emergency may leave his own lane of traffic and encroach upon the lane of an approaching vehicle when the circumstances are such as would lead a reasonable person under the same conditions to execute such a maneuver in order to avoid imminent peril. When a driver finds himself in such peril he is not expected to exercise the same cool and deliberate judgment as in a situation where no emergency exists. The law recognizes that any person when facing sudden danger may fail to use the best judgment, and he is not guilty of contributory negligence merely because he makes a mistake in choosing a method to escape a peril which was caused by the negligence of another. Peeples v. Dobson (La.App. 2 Cir., 1957) 99 So.2d 161; Bass v. Burnley (La.App. 2 Cir., 1939) 193 So. 200.
Therefore, this case narrows itself to a question of which version of the accident is most acceptable to the court. If we accept the version given by the Wilsons, all judgments of the lower court should be affirmed because Miss Wilson was faced with a sudden emergency and therefore justified in driving her vehicle to its left and directly in front of the approaching truck-trailer unit.
On the other hand, if we accept the truck driver's version of how the accident happened, he was entirely blameless because he stated he never left his own lane of traffic; that Miss Wilson suddenly, without any apparent reason, drove her car sharply to its left and directly in front of his truck at a time when he could not possibly have avoided the accident.
For the resolution of this problem we do not feel it is controlling to this decision that we determine the exact point of impact. The crux of our problem is not the point of impact, but the cause of the collision. This cause did not originate at the point of impact. To the contrary, the final maneuver by the blameless driver was rendered necessary by the previous negligent act of the approaching driver. In other words, either version of the accident justified one driver to leave his own lane of traffic.
In determining this perplexing factual question, this court has been handicapped *842 by the death of our esteemed brother and eminent jurist, the Honorable David I. Garrett, who presided during the trial, but died prior to having rendered his decision. It was stipulated by all parties that his successor, Judge Mack E. Barham, could decide the case from the record. While we feel Judge Barham did an excellent job, as evidenced by his well written opinion, it is unfortunate that we do not have the written reasons of the presiding judge who had an opportunity to hear and observe the witnesses. The usual rule of according great weight to the factual findings of the trial judge is, therefore, not applicable in the instant case.
After careful consideration of the entire record, we have concluded the sole and proximate cause of this accident was the negligence of the truck driver by invading the opposing lane of travel, thereby creating an emergency which justified Helen Wilson in turning her vehicle to its left in an attempt to escape an imminent head-on collision. To conclude otherwise, we must assume that Miss Wilson deliberately drove her car from a position of safety directly across the highway in front of the approaching truck-trailer unit, which assumption we believe is unreasonable as there is no evidence in the record that explains such a maneuver by Miss Wilson. While there was some testimony presented in an effort to show the highway was several inches higher than the shoulders, this evidence was not convincing. In fact, there was no testimony to indicate Miss Wilson lost control of her vehicle at any time. If Kelly was operating his truck entirely in his own lane of travel, with no other vehicles in sight, and travelling at a moderate rate of speed, we are unable to conceive of such irresponsible and suicidal driving by Helen Wilson. Kelly offers no satisfactory explanation why she suddenly turned into his lane of traffic. It is true she testified when she first saw the lights of the approaching truck, she thought one vehicle was passing another. From this testimony, it is argued that she was obviously confused and perhaps became unduly alarmed, resulting in her pulling her vehicle first to the right and then to the left in front of the approaching truck. However, we do not feel her testimony justifies such a conclusion.
Having concluded the lower court correctly decided the accident was caused solely by the negligence of the truck driver, the only remaining issue to be decided is the correctness of the award of $750 to Miss Helen Wilson for personal injuries in Suit No. 9665. As a result of the accident, Miss Wilson received very minor injuries which necessitated her staying in the hospital only one day and produced no permanent disability. In fact, we feel her injuries were inconsequential and the award of $750 was adequate under the circumstances.
For the reasons assigned, the judgment appealed from is affirmed at the cost of defendants-appellants.
Affirmed.