MORIAL, Judge
(dissenting).
On April 8, 1972 at approximately 10:45 A.M. plaintiffs were among a group of people standing in front of the Dynasty Room Lounge on the corner of Washington Avenue and Loyola Street. Plaintiffs decided to cross Washington Avenue. Before crossing the street they looked and did not see any oncoming traffic from either direction on Washington Avenue, which is a two way street. Plaintiffs proceeded to cross Washington Avenue. At a point approximately in the middle of the street plaintiffs were suddenly and without warning knocked to the ground by an unmarked New Orleans Police Department (NOPD) vehicle driven by Sgt. Howard Pittman. The NOPD vehicle was traveling in the left lane against traffic and had no siren sounding, horn blowing, light flashing, or brakes screeching immediately prior to the accident.
Sgt. Pittman testified he had used the emergency phone on the corner of Loyola *562 Street and Washington Avenue which is one block from Danneel Street. He noticed a large congregation of people gathering at the next corner, got into his car and drove toward it using the left lane because the crowd had flowed out onto the street. Upon arrival he observed two persons fighting and as he pulled up to them the two people fell against the side of his automobile at which time someone yelled “police” and the crowd dispersed rapidly. Shortly thereafter, George Adams came from a nearby house holding a cloth to his head and stated to Pittman that he was hurt. Adams asked Pittman to take him to the hospital which he did. Pittman testified that on the way to the hospital Adams told him the fight was because of Dozier’s wife. Upon arrival at the hospital he observed that Claiborne Scott had driven Dozier to the hospital. Pittman then went to Dozier who informed him that his car had struck him. However, Pittman further testified:
“. . . When I got to the hospital I got Adams in the hospital. I went back into the room where Dozier was. He was laying on the table. I asked him what they were fighting about in the street. What fight? Who was fighting? We wasn’t fighting. Who told you that dam [sic] lie?’ This was his words there. I asked him no other questions. I got back out, went on the radio. One other things he asked, ‘Why you run over us with your car?’ So when I got back to the car I called immediately on the radio to send a car to preserve the scene and send an accident team out and find out what the witnesses seen. What occurred. Since one man in the hospital was claiming an accident involving the police car had occurred, I went back to the scene.”
Officer Passman was immediately dispatched to investigate the accident. He testified that he could find no witnesses at the scene of the accident. Though he testified that he had names and addresses of witnesses, he did not seek any of them. He went to the Public Health Service Hospital to interview the plaintiffs. When Passman arrived at the hospital he met Adams’ aunt, Mrs. Ditmus. She told him that her nephew had been hit by a car driven at a high rate of speed and the car had fled. He talked to the plaintiffs (he could not remember if they were together or separate at the time) who told him they had been hit by a car while crossing Washington Avenue at Danneel Street en-route to Dozier’s home. Passman further testified he was unable to find any damage on the front of the car; however, he did observe that the car was dusty and the upper portion of the right rear quarter panel was noticeably absent of dust as if something had wiped it clean or a foreign object had come in contact with it. He found blood approximately four inches on the downtown side (right lane) of the center line of Washington Avenue.
Eyewitnesses testifying were: Helen Williams, Linda Gale Ridgley, James Crumpton, and Claiborne Scott. Each testified that he or she was among the group of people standing in front of the Dynasty Room Lounge and they witnessed the plaintiffs being struck by a vehicle as they crossed Washington Avenue. All said that at a point approximately in the middle of the street plaintiffs were struck by a car. The car continued half-way into the next block before stopping and backing up to the scene. Each stated that at no time was there a dispute or altercation between the plaintiffs before the accident; nor, was there any siren, horn, light or screeching of brakes. All testified Adams went to his house to get a towel for the bleeding and that he was taken to the hospital by Pittman.
Helen Williams further stated that she and a friend helped Dozier to the sidewalk. He was thereafter taken to the hospital by Scott.
Crumpton testified he journeyed with Adams to the hospital in the police car. He did not remember any conversation between Pittman and Adams.
*563 Scott testified that he followed Pittman to the hospital with Dozier in the car. He further stated:
“. . . put him in the hall and this officer, the one that had hit him, he came over. He was really mad. You know, he told us to get out of the hospital. You know, because we wanted to be witnesses. Gave him my name. You know, I just gave him my name and I just left because he was acting pretty ugly, you know.”
Each plaintiff, though not together from the time of the accident, recited essentially the same facts to both Pittman and Pass-man. While the four eyewitnesses were somewhat inarticulate in their testimony it reads more truthful than the more articulate testimony of Pittman and Passman. All testified that there was no fight or crowd in the street. Further, while in the hospital, Dozier denied there had been a fight. Pittman had no lights or sirens operating on his vehicle and was not within the emergency provisions of LSA-R.S. 32:24. Pittman stated he was in the wrong lane of travel which places him under a presumption of negligence. Wilson v. Kelly, 138 So.2d 837 (La.App. 2 Cir. 1962). Whether plaintiffs were crossing the street or in a crowd standing in the street Pittman had a duty to avoid hitting them.
Without any findings or reasons for judgment of the district court, I dare not presume the reasons of the district court for dismissing plaintiff’s suit. I am mindful of the admonition of our Supreme Court in Canter v. Koehring Company, 283 So.2d 716 (1973) ; however, in the absence of any intimation from the trial judge that he had reasons to discredit the testimony of a witness or group of witnesses, I must assume that they are all of equal credibility, unless the contrary appears from the written record, which is the case here.
Absent any intimation or suggestion from the trial judge to the contrary, I must assume that his judgment was based upon what he considered a preponderance of the testimony. Either that, or he was not satisfied that the testimony adduced, if believed, was sufficient to sustain the action. As to matters of this kind, a trial court has no advantage over an appellate court. The testimony preponderates in favor of plaintiffs and was sufficient to sustain their action.
The majority places great emphasis on the absence of any injuries to the lower torso or legs of the plaintiffs. It is not unlikely that a person struck by the uppermost portion of the right rear quarter panel of a vehicle (the part of which appeared to Passman to have been dusted recently) could sustain injuries at the upper level of the torso or to the head and face as a result of being knocked to the paved street.
I respectfully dissent.