ELLIS, Judge.
Plaintiff filed suit for damages totalling $12,979.80 against the defendant and his insurer as the result of injuries allegedly sustained in an accident which occurred on East Polk Street in the City of Baton Rouge on February 17, 1953. An answer was filed on behalf of the defendant denying the allegations of negligence charged to defendant Walker, who owned and operated the pick up truck which struck plaintiff, and in the alternative a plea of contributory negligence was made.
Plaintiff asked for and obtained a trial by jury which was held on January 26th and 27th, 1954, and a verdict rendered in favor of plaintiff for $5,000 plus interest and costs. Pursuant to said verdict judgment was signed February 1, 1954 and neither the plaintiff nor the defendants applied for a new trial, but all parties have appealed to this court.
There are three questions presented for decision, (1) the negligence if any of defendant Walker; (2) if Walker was guilty of negligence the next question is a plea of contributory negligence, and (3) if the plaintiff was not guilty of any contributory negligence and the negligence of the defendant Walker was the sole proximate cause of plaintiff’s injuries and resulting *324 damages, it is necessary to decide the question of quantum.
This accident occurred on East Polk Street which was a 27 foot paved street that runs generally east and west. The plaintiff was struck at approximately six feet east of the southeast corner of the intersection of Colorado and East Polk Street. Colorado Street is a 25 foot paved street which runs approximately north and south and dead ends, forming what is commonly known as a “T” intersection into East Polk Street at a point two blocks east of Highland Road. This accident occurred about 7:00 p. m. on February 17, 1953 and it was admittedly dark and Walker’s truck was operating with its headlights burning. It was also shown that there are no sidewalks along East Polk Street on either its north or south side. There is some evidence about a 48 inch drainage culvert which was installed on the north side of East Polk Street, approximately four feet from the curb, that could have been used as a sidewalk, however, the testimony revealed that fresh dirt had been piled upon this culvert several months pri- or to the date of the accident and the preponderance of the testimony is to the effect that East Polk Street was used by pedestrians and that the defendant Walker, who had a place of business on Washington Street which is only a few blocks from the scene of the accident, was thoroughly familiar with East Polk Street. Whether the plaintiff should have been walking along the culvert described, it is admitted by all parties that at the time he was struck he was in East Polk Street.
It is plaintiff’s contention and testimony that he was walking in a westerly direction close to the north curb of East Polk Street going to Highland Road to eat supper with his sister, and that when he got close to the intersection of Colorado Street with East Polk Street he was struck from behind and it is admitted that it was the truck ’ driven by the defendant Walker which struck the plaintiff. Located to the East of Colorado Street about 30 feet from its intersection with" East Folk was an overhead street light, however, defendant Walker testified that he hit the plaintiff about 25 feet from the light. As it is shown that the plaintiff was struck five or six feet from the southeast comer of the intersection of Colorado and East Polk Street, this would place the plaintiff approximately 24 to 25 feet from the light, which would serve no purpose if it did not throw light that distance.
The only testimony as to .where pláintiff was at the time the defendant Walker first saw him is that of the latter and he says that plaintiff was four or five feet from his truck when he first saw him. He testified also that the plaintiff was five or six feet out in the street at the time he first saw him, and “looked like he was trying to cross the street when I first saw him. He was looking south.” Walker was then asked: “Was he moving south or moving west?” and he answered, “He was moving south,” and he frankly stated that “when I first saw him I hit him at the same time.” Counsel then cross examined Walker by stating that “You hit him at the same time so you don’t really know which way he was going?” and his answer was, “When I saw him he was in front of the truck looking south." Further, that the right bumper struck the plaintiff and he fell on the hood and radiator on the right side of the truck and was carried on the truck across the intersection where he fell off. There was one witness who testified that the plaintiff was “knocked” through the air by the force of the blow, however, he was mistaken or deliberately falsified for it is definitely shown that plaintiff was carried on the radiator and fender of the truck to where he fell off. At the time plaintiff was struck by the truck a car was approaching from the opposite direction on East Polk Street and was being driven by George Arnold who had four passengers with him. There was testimony by an officer that the defendant told him he was blinded by the lights of the approaching car and the police report has a statement that defendant was “apparently” blinded by these lights. Defendant denied being blinded by the lights, and from the evidence he *325 could not have been blinded by the lights of Arnold’s approaching car as it is shown that the battery was weak, and the lights were not bright. There is a dispute as to what distance south of the north curb of East Polk Street plaintiff was walking at the time he was struck. According to the witnesses it varies from five inches to five or six feet, but regardless of this fact, the defendant Walker was guilty of gross negligence unless his contention that plaintiff intended to go south and cross East Polk and stepped suddenly in front of his truck can be maintained under the evidence in the case.
There is quite a difference in the testimony as to where the plaintiff was lying after falling from the truck. It is plaintiff’s contention that he was lying close to or north of a line drawn from the east corner to the west corner of Colorado Street where it intersects East Polk Street and near the southwest corner of the intersection of Colorado and East Polk. On the other hand defendants maintain that he was lying in East Polk Street near the southwest corner of the intersection of the two streets. This physical fact is of little value as the defendant Walker testified that he tried to cut a little to the left when he first saw the plaintiff, and in this case George Arnold testified in telling about the actions of the defendant Walker’s truck which was approaching that:
“ * * * I was looking mostly to my right, and at the particular time the car was meeting me it seems as though the person was going to lose control of it. It didn’t come over on my side of the street but it seemed as though it kind of turned like that and I cut over to the right side 'because I thought maybe I could avoid the car from hitting me, and after it didn’t come on the left side I drove back in the street like I was at first.”
Therefore, as the defendant’s truck did not proceed in a straight line after striking the plaintiff, the point at which he was found after the accident would be of slight value in determining the point on East Polk Street at which the plaintiff was struck by the truck. Plaintiff testified and also told the defendant immediately after the accident that he was going to the Highland Road, and there was no reason for him to have crossed East Polk Street at Colorado. It is also significant that defendant Walker testified there was absolutely nothing to obstruct his view and when this fact was brought to his attention on cross examination with a statement from counsel for plaintiff to the effect that “if he was there you could have seen him,” he answered: “I wasn’t looking at the sides, I was looking at the front.”
Counsel for defendants strongly relies upon the case of Jones v. American Mutual Liability Insurance Co., La.App., 189 So. 169, 171. In that case the Court stated:
“It will be seen from the foregoing that Jones must have been struck at a point very close to the neutral ground and at a time when he had just stepped from a place of safety into the roadway in front of the oncoming Ferguson car. * * *
* * * * * *
“We are now firmly convinced that the evidence in this case does not warrant the conclusion that Ferguson was imprudent. We are not permitted to presume that he was negligent. Plaintiff carried the burden of establishing fault on his part by a preponderance of evidence. Not only has she failed in this respect but it is now manifest to us, after a most careful perusal of the record, that the death of Jones was caused solely by his gross negligence in stepping out into the roadway from a place of safety directly in front of the Ferguson car. * * * ”
In the present case, plaintiff has shown that he was. walking in a westerly direction along the north side of East Polk Street, which at the point he was struck was well lighted, and there was no reason shown by this evidence as to why the defendant Walker did not see plaintiff. He was not keeping a proper lookout and this was the proximate cause of the accident. *326 Further, the testimony does not prove that the plaintiff was walking south and stepped off of the north side of East Polk Street in order to cross the street directly in the path of defendant’s truck. The testimony shows that the plaintiff received a compound fracture which means that he had an outside laceration, and according to Dr. Mosely this laceration was approximately in the middle third of the medial anterior aspect of his leg which would be in front midway from the knee to the ankle. This laceration was caused by the broken bone, in other words, the force of the truck striking the plaintiff on the back of the leg broke the bone and it broke the skin. Counsel for defendant contends that the bumper caused the laceration and this fact would tend to prove that plaintiff was not struck from behind. Dr. Mosely clearly testified that “The force that produced the fracture apparently did not produce the laceration except indirectly.”
We find no reason to go into detail as to each witnesses’ testimony although counsel for defendant strongly attacked the testimony of the occupants of the Arnold car. The facts which we consider proven have been outlined above and do not depend upon the testimony of the occupants of the Arnold car.
 The negligence of the defendant Walker was the sole proximate cause of the accident.
Quantum
Defendant contends that there is no manifest error in the award of $5,000 to the plaintiff. Plaintiff vigorously urges on his appeal that the award is far below the amount to which plaintiff is entitled. Both plaintiff and defendants in analyzing the verdict of the jury first totalled the special damages proven which consist of medical and hospital expenses totalling $1,256.80, including a $30 future medical expense as estimated by Dr. Mosely, plus the actual loss of earnings to the date of the trial which defendant says amounted to $890 and which plaintiff contends amounted to $1,253. According to the record the plaintiff was paid $25 per week for five days work, which he lost from February 17, 1953, the date of the injury, to September 1st, 1953. From September 1st, 1953 through the month of December, 1953, according to Miss Drehr, plaintiff’s employer, he averaged $8 per week, however, Miss Drehr kept a record of the days which plaintiff worked and the amount she paid him, which is the more accurate method of arriving at plaintiff's loss of earnings. She testified that the plaintiff worked in 1951 two hundred sixty (260) days; in 1952 two hundred sixty-four (264) days; and in 1953 thirty-four (34) days, for which she paid him $5 per day. In other words, he received $1,300 in 1951, $1,320 in 1952, and $170 in 1953. We believe it would be fair to take 260 days as the basis of the number of days he would have worked in 1953, and he would have therefore earned $1,300, and deducting $170 would leave a loss of $1,130. Adding this amount to the $1,256.80 would be $2,386.80 which, deducted from $5,000 leaves $2,613.20 for his pain, suffering and disability, which is insufficient in view of the facts herein.
The plaintiff suffered a compound fracture of the left tibia and fibula, which is the large and small bone of the leg, also a number of bruises about the body and two inches of his scalp was badly bruised. When he was brought to the hospital his foot was twisted so that the toes were in the position the heel should have been and vice versa, which resulted in a cessation of the blood circulation, and the broken bones did quite a bit of damage to the soft tissues in the leg. He suffered from sh'ock and also received a concussion. Plaintiff, of course, was taken to the hospital where he received opiates, his foot was straightened out, his leg opened up by surgery and his bones aligned. One piece of the bone had to be secured with two metal screws which are still in the plaintiff’s leg, however, the doctors do not anticipate any trouble from them. Plaintiff remained in the hospital from February 17, 1953 to March 12, 1953. He was placed in a cast up to his hip and wore this cast until June 15, *327 1953 and thereafter he wore a leg brace, and with the aid of crutches was able to begin to walk. He wore his leg brace until November, 1953, and thereafter according to instructions when his leg pained him. The doctors estimated the disability in his leg at ten to fifteen per cent, and Dr. Mc-Vea, who testified on behalf of the defendant, was of the opinion that plaintiff would have some discomfort possibly for the rest of his life. Dr. McVea felt that plaintiff could return to his work as a gardner but would suffer as above described.
Plaintiff was 26 years of age and according to Dr. McVea was sub-par mentally prior to as well as after his injury.
Plaintiff complained of dizziness and headaches and pains in his shoulders which Dr. Foreman, witness on behalf of plaintiff, was unable to attribute to any objective symptoms of damage to his nervous system or any complications from his head injury. He attributed this condition “more to a frame of mind or state of mind which is commonly called traumatic neurosis.” He was of the opinion that plaintiff actually had the headaches, dizziness and pain and that it arose as a result of a situation he found himself in after the accident, “The disability from a broken leg, hospitalization, possibility of prolonged disability and the various arrangements that were made back and forth about settling this matter.” Dr. Foreman on cross examination was of the opinion or believed that these headaches, dizziness and pain in the shoulders would disappear in time and leave no permanent disability. It would appear from this doctor’s testimony that an award for mental anguish, pain and suffering would cover this traumatic neurosis.
Counsel for plaintiff and defendant have cited many cases in support of what they believe an award should be in this case. There is no doubt that the decreased purchasing power of the dollar should be taken into consideration. Scott v. Claiborne Electric Co-operative Inc., La.App., 13 So.2d 524; Weadock v. Eagle Indemnity Co., La.App., 15 So.2d 132; Eleazar v. Illinois Central R. Co., La.App., 24 So.2d 387.
Upon the basis of the testimony we believe an award of $3,000 for mental anguish, pain and suffering, $2,500 for permanent disability of 10% to 15% in the use of the left leg; and $2,386.80 for special damages, medical and hospital bills, making a total of $7,886.80 would be just, and it is thus decreed.
The judgment of the district court is therefore amended by increasing the award to the amount stated and as amended is affirmed.