94 So.2d 671

Leon A. NOLAND

v.

**LIBERTY MUTUAL INSURANCE COMPANY et al.**

No. 43211.

April 1, 1957.

Durrett, Hardin & Hunter, Baton Rouge, Richard Kilbourne, Clinton, for plaintiff, appellant below, and applicant.

Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for defendants-appellees-respondents.

HAMITER, Justice.

Plaintiff, Leon A. Noland, seeks a judgment herein for damages allegedly sustained as the result of a collision between the automobile he was driving and a bakery truck operated by one Jack B. Goudeau. Cited as defendants were the named truck operator, Wm. Wolf Bakery, Inc. (Goudeau's employer and truck owner), and Liberty Mutual Insurance Company (the liability insurer of the latter).

The district judge dismissed the suit. Although being of the opinion that the defendant Goudeau was negligent, he concluded that plaintiff was contributorily negligent.

On appeal the Court of Appeal, First Circuit, affirmed the judgment. It held that there was no negligence on the part of the truck driver and, hence, it did not pass on the question of plaintiff's contributory negligence. See 89 So.2d 428. We granted certiorari.

The record discloses that the collision occurred before daylight during the morning of August 7, 1954, about eight miles north of the Village of Scotlandville, Louisiana, on U. S. Highway 61 which (at such point) is black topped, is twenty feet in width, and has four foot shoulders. Immediately before the accident plaintiff's automobile, having just completed a curve to its right, was traveling in a southerly direction in the proper or west lane at a speed of approximately 35 miles per hour. The bakery truck approached it from the south (proceeding in a northerly direction) at a speed of from 45 to 47 miles per hour, in the east lane, and on a straight roadway.

Some fifty feet south of the mentioned curve (which plaintiff's car had completed) was a motionless automobile belonging to one Abe Sims, part of which was in the truck's lane. This third vehicle, parked partially on the roadway at approximately a forty-five degree angle without lights, flares or other warning signals, was headed toward the north with its left front wheel on the paved surface and the remaining wheels on the shoulder. According to Goudeau it occupied about one-half of his side of the highway and was not seen by him until he was approximately seventy-five feet therefrom, at which time he applied his brakes. He is not sure whether thereafter the truck accidentally swerved

into plaintiff's traffic lane or it skidded there as a result of his applying the brakes. Nevertheless, he admits that his vehicle veered into plaintiff's lane and that therein (just about alongside the parked car) the front of his truck struck the side of plaintiff's automobile and forced it into the ditch adjoining the western shoulder.

Plaintiff and Goudeau (they were the only eyewitnesses to the accident) disagreed in their testimony only with respect to the condition of the headlights of the former's car as the vehicles approached each other. Goudeau testified that they were on bright, that he asked for dimmers by blinking his own lights, and that plaintiff immediately complied with the request. Plaintiff, on the other hand, stated that his lights were dim at all times and that no signal was given by Goudeau.

Title 32 of the Louisiana Revised Statutes, which relates to motor vehicles and traffic regulation, contains the following provisions:

"§ 231. Upon all highways * * * the driver of a vehicle shall drive it upon the right half of the highway * * * except when overtaking and passing another vehicle, subject to the limitations applicable in overtaking and passing set forth hereafter.

"§ 232. Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving the other for at least two hundred feet before meeting, one

half of the main travelled portion of the highway.

"§ 233. * * * C. The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety. Whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing."

■ In view of these provisions, and since the instant collision occurred while the bakery truck was in the wrong traffic lane, the presumption is that Goudeau was negligent in the operation of his vehicle. And it follows that the burden is upon him to show that the accident was not caused by his negligence or that there were justifiable circumstances which would excuse his conduct. See Schick v. Jenevein, 145 La. 333, 82 So. 360 and Miller v. Hayes, La.App., 29 So.2d 396.

As the Court of Appeal pointed out there are decisions in our jurisprudence to the effect that where a driver is faced with and he acts during a sudden emergency not of his own making, and in attempting to avoid a perilous situation he causes injury to another, his conduct does not give rise to an action in damages in favor of the per-

son so injured. Too, our courts have held that the existence of certain circumstances beyond the control of a driver (for example, blinding lights of approaching vehicles) may exculpate him from a prima facie showing of negligence. But those cases (cited by the Court of Appeal and by defense counsel in their brief) are inappropriate here, for we do not find that any such emergency or exculpatory circumstances existed in connection with the instant collision. Neither did the trial judge so find, he having observed in his written reasons for judgment that: " * * * the night was clear, the road between the bakery truck and the parked Sims car was straight, and *Goudeau doesn't complain that his vision was in any way interfered with.*" (Emphasis ours.)

The Court of Appeal, in holding that the truck driver was not negligent, believed that Goudeau's vision was impaired by the lights of plaintiff's approaching car. But, as indicated above, we find no testimony or other evidence on which to base such a belief. In fact, Goudeau was asked by the trial judge: "Why hadn't you seen it, because Mr. Noland's car was coming slightly around the curve which threw his headlights directly on that parked car at a time when they were not blinding in your face according to every experience that I have had. Now, why didn't you see that parked car then?" And he replied: "Sir, I just didn't see it. That's all I know, sir. What caused me to didn't see it I don't know then."

■ Under these circumstances we can only conclude that Goudeau's failure to timely observe the parked vehicle was due to his not keeping a proper lookout as to the condition of the road ahead. His seeing such vehicle at the last minute and swerving into plaintiff's lane to prevent striking it (or being forced there by skidding when he attempted to stop) was not an emergency created by another as referred to in the cases relied on by defendants. Rather, the emergency here resulted from Goudeau's lack of vigilance.

■ While we agree with the district court that Goudeau was negligent we do not agree that the plaintiff was also guilty of negligence in failing to observe the parked car. No authority has been called to our attention, and we know of none, holding a driver to that degree of care which requires him to see during the nighttime an unlighted obstacle in a traffic lane other than his own, such as was the situation with respect to the Sims vehicle.

This case is distinguishable from Taormina v. Reid, La.App., 71 So.2d 351 which was cited and relied on by the district judge. The accident therein obviously occurred during the daytime, and it was admitted that the driver of the car in the proper lane plainly saw the obstacle (about 300 feet ahead) in the path of the vehicle approaching him but made no attempt to slacken his speed, he simply assuming that the approaching vehicle would stop in time.

We hold, therefore, that plaintiff was not guilty of contributory negligence and that he is entitled to recover for the losses he sustained as a result of the collision. For a determination of the quantum of damages, however, the case will be remanded to the Court of Appeal since it has not passed upon that issue.

For the reasons assigned the judgment of the Court of Appeal is reversed and set aside and the cause is remanded to that court to be proceeded with according to law and consistent with the views herein expressed. The defendants shall pay all costs.