138 So.2d 410 (1962)
SERVICE FIRE INSURANCE COMPANY and Bennie lsser, Plaintiffs-Appellants,
v.
J. E. JOHNSON and J. D. Bell, Defendants-Appellees.
No. 503.
Court of Appeal of Louisiana, Third Circuit.
March 8, 1962.
Cronvich & Ciaccio, by Alwyn J. Cronvich, New Orleans, for plaintiffs-appellants.
J. Y. Fontenot and Dubuisson & Dubuisson, By James G. Dubuisson, Opelousas, for defendants-appellees.
Before TATE, FRUGÉ, and CULPEPPER, JJ.
FRUGÉ, Judge.
This is a suit for damages arising out of an automobile collision which occurred when an automobile, owned by defendant J. D. Bell and driven by Lester Johnson (minor son of J. E. Johnson), collided with an automobile owned and operated by plaintiff Bennie Isser on U. S. Highway 190, approximately three miles west of Eunice, Louisiana.
*411 The plaintiff Bennie Isser sought damages for personal injuries caused by the accident, together with the sum of $50.00 representing the deductible portion of his collision insurance policy. The other plaintiff, Service Fire Insurance Company of New York (Isser's collision insurer), joined in the suit to recover the amount it had to pay for Isser's automobile under its contract of insurance with Isser.
The defendant J. D. Bell reconvened in the suit seeking damages which he suffered as a result of the said accident, being damages to his automobile and a claim for injuries.
Since the trial court did not hand down written reasons, we assume that it found that both drivers were at fault and dismissed the plaintiffs' suit as well as defendant's reconventional demand. From this judgment, only the plaintiff Bennie Isser (hereinafter called "plaintiff") appealed. The defendants answered the appeal; the defendant Bell prayed that his reconventional demands be sustained and that judgment be awarded in his favor.
There is no dispute that, for some time prior to the collision, the vehicle driven by the plaintiff was proceeding in an easterly direction on Louisiana Highway 190, and that the J. D. Bell's vehicle was proceeding in a westerly direction on the same highway, returning to the Oleander Courts, which the defendants had left approximately one hour previously. Nor is there any dispute that this collision occurred approximately 100 feet east of the Oleander Cafe, that the Oleander Courts are approximately 50 feet east of the cafe, almost directly in front of the scene of the accident, and that the Oleander Cafe and Courts are south of the highway, adjoining the eastbound traffic lanes. With respect to the proximate cause of the accident, there is, as usual in such cases, direct conflict in the position taken by the parties to this action.
The judgment of the lower Court dismissed the petition of the plaintiffs and the reconventional demand of the defendant, thereby indicating that the trial court accepted the plaintiff's version of the accident and found that the defendants were negligent in failing to have their vehicle under proper control, and that the accident occurred in plaintiff's lane of traffic, but dismissed plaintiffs' suit on the grounds of contributory negligence. The defendants had alleged that plaintiff J. D. Bell was negligent in failing to dim his headlights as the vehicles approached (Tr. 14, answer of defendant Bell, par. 16; Tr. 20, answer of defendant J. E. Johnson, par. 17), and in driving at an excessive speed (Tr. 20, answer of defendant, J. E. Johnson, par. 17).
First, let us consider the defendants' negligence in failing to keep their vehicle under proper control. It seems the allegations in the answers filed on behalf of both defendants, the testimony of J. D. Bell and of Lester Johnson, and the statement of Johnson made to Trooper O. S. Young several hours after the accident, all seem to support the finding of negligence on the part of the defendants.
The defendant, J. D. Bell, in paragraph 15 of his answer, alleged:
"That the said Lester Johnson then reduced his speed and moved his vehicle toward the right edge of the pavement and in doing so the right wheels thereof accidentally slipped off the paved portion of the said shoulder thereof, causing the said automobile to veer to the left and onto the paved portion of the said highway where it collided with the vehicle being operated by Bennie Isser; * * *." (Tr. 14). (Emphasis added)
Defendant, J. E. Johnson, in paragraph 15 of his answer, alleged the following:
"That Lester Johnson reduced his speed and pulled his car partly on the shoulder of the road to his right so that he could have a better view of the middle of the road and on righting his *412 car and getting it back on the pavement in what he believed to be his lane of traffic the collision between the two automobiles took place."
And in paragraph 18 alleged:
"That the plaintiff Bennie Isser by reason of the extra strong headlights on his auto and which permitted him to well see the auto of Lester Johnson and which fact gave him the last clear chance of avoiding the accident by pulling a little to his right and yielding a little of his lane of traffic to avoid the accident which occurred." (Tr. 20). (Emphasis added)
The defendants seem to have judicially admitted that Lester Johnson did not have control of his vehicle in that he veered back onto the highway, and, that the collision occurred in the plaintiff's lane of traffic.
The testimony of the defendant Bell and of his driver Lester Johnson, although differing slightly from the allegations in their answers, show that young Johnson had lost control of the automobile. At page 101 of the transcript, Bell testified that he believed Lester Johnson eased over as the two cars became nearer and "he eased off of the pavement and it happened there was a deep rut on the side where he eased off. * * *" The youth, Lester Johnson, testified as follows:
"Q. And what happened as the two cars got close to each other?
"A. I ran off the highway, I slowed down then I ran off the highway.
"Q. Do you mean you went into the ditch?
"A. No sir.
"Q. When you say highway, you mean the paved portion?
"A. Yes, sir.
"Q. Now what happened after you went off the paved portion of the highway?
"A. I hit a hole.
* * * * * *
"Q. What happened to your car after you hit this mudhole?
"A. I tried to bring it on the road." (Tr. 116)
Several hours after the accident, State Trooper O. S. Young located Lester Johnson and questioned him so that he might complete his investigation of the accident. Young Johnson admitted to Trooper Young that he had lost control of the car, as appears from the following testimony of Trooper Young:
"Q. Did Lester Johnson admit that he was at fault?
* * * * * *
"A. He said `Yes I was wrong, but I couldn't help it. I had lost control of the car when I went off the shoulder and that is what happened.'" (Tr. 85)
Although this was denied by Johnson at the trial, his statement to Trooper Young who had no interest in the outcome of the matter can be considered an admission against interest.
Plaintiff further contends that the accident occurred in his lane of traffic. On this specific point, the testimony of the plaintiff and of the defendants (J. D. Bell, and his driver, Lester Johnson) was in direct conflict, with each maintaining that his vehicle was on its proper side of the road. In view of the hopeless conflict in the testimony of the plaintiff and the defendants, it is then necessary to resort to other evidence to establish the facts of this case. As pointed out earlier, the answer of the defendant, J. E. Johnson, alleged that the plaintiff had "the last clear chance of avoiding the accident by pulling a little to his right and yielding a little of his lane of traffic to avoid the accident which occurred." (Tr. 20, par. 18). This, the plaintiff contends, constitutes a judicial admission by the defendant of the position *413 of the vehicles with respect to the center line of the highway at the time of the accident. The testimony of the investigating officers, Captain Jerome Haas and Trooper O. S. Young of the Louisiana State Police, corroborates plaintiff's contention that the accident occurred in the eastbound traffic lane on which the plaintiff was legally proceeding. Captain Haas testified at length, both on direct and on cross-examination that there was debris at the scene of the accident and that the debris was found in the south lane (eastbound lane) of the highway, his testimony is as follows:
"Q. Was there any debris on the road in the south lane?
"A. There was.
"Q. What debris was in the south lane?
"A. A lot of mud and busted headlight glass.
* * * * * *
"Q. From this debris that was on the south side where did that debris come from?
"A. From both of the automobiles.
* * * * * *
"Q. What was this debris you saw on the south side?
"A. Well it was headlight glass.
"Q. From which automobile?
"A. I would say from both automobiles. They were part of the radiator. I don't remember noticing which parts belong to which automobile, but there was so much of it there. Both cars were almost completely demolished." (Tr. 43)
On re-direct Captain Haas testified as follows:
"Q. You stated on cross-examination that there was some radiator debris on the south lane of the highway?
"A. There was some parts of a grill besides glass and dirt." (Tr. 47)
The testimony of Trooper Young Corroborates that of Captain Haas in regards to the character of the debris and its location:
"Q. Did you find any debris at the scene?
"A. There was a lot of mud and pieces of grill and one rim of a headlight.
"Q. Where was that?
"A. On the south lane right west of the vehicel number one which was Mr. Bell's vehicle." (Tr. 83)
From the testimony of the above mentioned troopers, it appears that the debris was found in the plaintiff's lane of traffic, and not in the defendants' lane of traffic.
The Supreme Court and the appellate courts of this State have been confronted with similar situations where the testimony of the parties to the accident are conflicting and have resorted to the physical facts to resolve the issue involved. In the case of Coltharp v. Hearin Tank Lines, Inc., 239 La. 445, 118 So.2d 881, the Supreme Court was confronted with a situation similar to the instant case, in which the testimony offered in support of the respective contentions was hopelessly irreconcilable. The accident in that case occurred on U. S. Highway 171 between 12:00 and 1:00 A.M., and the investigating officer arrived at approximately 1:30 A.M. The officer had had about five years of experience in investigating accidents and testified that glass and other debris were found two feet east of the center line of the highway. Three employees of the defendant, Hearin Tank Lines, Inc., arrived on the scene of the accident approximately six hours later and made an extensive investigation of the physical facts and circumstances. The defendant also introduced testimony from two nearby residents and that of four other persons who were involved in towing the defendant's truck to *414 New Orleans. The Court adopted the testimony of the State Trooper as showing a correct version of the point of impact and affirmed the judgment of the district court. It was urged by the defendants that they presented thirteen witnesses as opposed to four for the plaintiffs, but the Court held that "it is not always that the preponderance of the evidence is on the side of the greater number of witnesses." The Court quoted from Edwards v. Shreveport Creosoting Co., Inc., 207 La. 699, 21 So.2d 878, and said:
"To prove a case by a preponderance of the evidence simply means evidence must be produced which is of greater weight or is more convincing than that which is offered in opposition to it."
A review of the actions of the parties prior to the accident and the ultimate destination of the two vehicles further supports the plaintiff's version of the accident. The plaintiff was driving towards New Orleans on a straight paved highway at a reasonable rate of speed. He had had no intoxicating beverages to drink and had stopped in Lake Charles for coffee. The plaintiff had no reason to turn off or to cross the highway. The defendants, on the other hand, were returning to the Oleander Courts, almost directly in front of which the accident occurred. To reach these tourist courts, the defendants had to cross the traffic lane in which the plaintiff was traveling. Trooper Young testified that Lester Johnson told him that when he hit the shoulder "he immediately tried to get back on the pave for fear of turning over." It would appear that this boy gripped by fear of turning over, swung his vehicle sharply in an attempt to return to the paved portion of the highway and "veered" across into the traffic lane of the plaintiff. His lack of judgment in so doing amounts to negligence. In Hazzard v. Edwards, 2 La. App. 514, the defendant's son swerved suddenly to his left after striking a rut and struck the plaintiff's car which was on its right side of the road. The court stated: "the boy was under sixteen years of age, and while, no doubt, he is bright and understands the use of the controls of a car, that it was a lack of judgment on his part amounting to sheer negligence that caused the accident".
We are of the opinion the facts show that the defendants' automobile was on the wrong side of the road. In Breaux v. Valin et al., 138 So.2d 405, involving a similar situation, this court stated:
"* * * Under such circumstances, a driver who on his wrong side of the road collides with another car which is in its correct lane of traffic is required to exculpate himself of any fault, however slight, contributing to the accident. Rizley v. Cutrer, 232 La. 655, 95 So.2d 139; Noland v. Liberty Mut. Ins. Co., 232 La. 569, 94 So.2d 671; Carhee v. Scott, La.App. 2 Cir., 104 So.2d 236, certiorari denied; Cormier v. Southern Farm Bureau Cas. Ins. Co., La.App. 1 Cir., 94 So.2d 901.
"As the cited decisions show, a driver is under a duty to exercise more than ordinary care in order to avoid causing a collision by invading the contrary lane of traffic Such behavior by the invading driver is so unforeseeable by, and creates such immediate and great hazard to, oncoming motorists who are legally approaching in their own right lane of traffic, as to require care of the highest degree and extra-ordinary effort on the part of the invading driver to avoid the almost certain danger of serious injury which will result if he suddenly crosses into the lane of traffic reserved for traffic approaching from the opposite direction.
"That this is the standard of care and the burden of proof by which the negligence of the invading driver is judged may be seen from the statements in Rizley v. Cutrer, cited above, the latest expressions by the Supreme Court on the subject. [In this suit], the defendant Cutrer collided with the plaintiff's vehicle *415 in the latter's lane of traffic. The trial court and the court of appeal held that Cutrer was not liable because the accident was unavoidable due to an unenforeseeable defect in the highway which caused him to skid into the opposite lane. The Supreme Court reversed, stating, inter alia:
"`Since the primary cause of the collision was Cutrer's act in driving his car into that part of the roadway reserved exclusively for traffic proceeding from the opposite direction, a mere statement of the accident makes out a prima facie case of negligence against Cutrer and, therefore, it was incumbent upon defendants to show by clear and convincing evidence that Cutrer's sudden presence in plaintiff's traffic lane was due to unexpected and unforeseen circumstances over which he had no control and that he did not in any particular contribute to the mishap. See Schick v. Jenevein, 145 La. 333, 82 So. 360; Miller v. Hayes, La.App., 29 So.2d 396 and Noland v. Liberty Mutual Ins. Co., 232 La. 569, 94 So.2d 671 [95 So.2d 140-41].
"`* * * Cutrer, having caused the accident by leaving his own traffic lane, is presumed guilty of negligence and the onus rested on him to demonstrate that the accident resulted from such a state of unforeseeable circumstances beyond his control (and to which he did not contribute), that he could not extricate himself, despite the efficient use of all protective measures at his command. In other words, it was his burden to show that he was not guilty of any dereliction, however slight, which may have had causal connection with the accident. We say this because it seems only reasonable to resolve that a motorist owes to the traveling public the duty of remaining in his own lane of traffic and, when he undertakes to enter the lane devoted to approaching traffic, he must be held strictly accountable for all damages resulting therefrom unless he clearly exhibits that his conduct in no wise contributed to the accident. By this, of course, we do not mean that such a motorist is the insurer of the safety of those injured in an accident such as the one in the instant case but only that, in order to be exonerated, he must establish his freedom from all fault by convincing proof. [95 So.2d 142]'"
We now turn again to the alleged negligence of the plaintiff. Defendants have alleged that the plaintiff was negligent in failing to dim his headlights as the two vehicles approached each other, momentarily blinding the driver of the Bell vehicle. Again, there is direct conflict in the testimony of the two owners of the vehicles. The plaintiff testified that his lights were dim and that he did not have to dim them while driving on this highway (Tr. 77). The defendant J. D. Bell testified, conversely, that the plaintiff's lights were bright and that he did not dim them as the two vehicles approached (Tr. 101). Lester Johnson stated there were "bright lights" (Tr. 115) and that these lights did not change. In a situation where there is direct conflict of testimony as to whether the plaintiff had his bright lights on (one witness for plaintiff and two witnesses for defendant), it is well settled jurisprudence that it is not always that the preponderance of evidence is on the side of the greater number of witnesses; for in evaluating the testimony of witnesses, the court also takes into consideration such factors as credibility, maturity and soberness. As between the testimony of the defendants J. D. Bell, who admittedly was drinking (Tr. 110) and Lester Johnson, his youthful driver of the tender age of fifteen,and on the other hand the testimony of the plaintiff, Bennie Isser, who appears to have been a more mature and sober man,we believe the testimony of Isser.
The defendant J. E. Johnson further alleged that the plaintiff was negligent in driving at an excessive speed. Again there *416 is conflict in the testimony of the parties, but no one testified that the plaintiff was exceeding the legal speed limit. Plaintiff himself testified that he was driving "between forty-five and fifty". (Tr. 64) The defendant Bell testified that he "believed that the other car was coming on at a very high rate of speed * * *' (Tr. 102) but later stated that he "would judge it was going fifty or sixty miles". (Tr. 113) In the absence of any showing that the plaintiff was exceeding the legal speed limit or driving at a speed excessive under the circumstances, the allegation of negligence, because of excessive speed must of necessity fall. After Lester Johnson lost control and went off the road, the plaintiff could in no manner have avoided the collision regardless of his speed. The distance between the two vehicles, when Lester Johnson left the highway, was insufficient to permit the plaintiff to stop before he was struck by the Bell vehicle, and when the Bell vehicle crossed the centerline into Isser's lane, the collision occurred.
Further, the testimony of the defendant Bell bears several inconsistencies which cast doubt upon its credibility. His actions in lending to a youth of fifteen years, with whom he was acquainted less than seven hours, his automobile which was less than eight months old, his failure to advise the youth as the two cars approached, permitting the boy to continue at a speed of forty-five miles per hour as they were within approximately 100 feet of the place to which they were proceeding, and his testimony on his activities while at the courts waiting for Lester Johnson to return cast serious doubt upon his capacity to intelligently appraise himself of his surroundings, especially in light of the following testimony:
"Q. * * * [W]ere you drinking at this time while you were at this tourist court?
* * * * * *
"A. I had a drink or two.
"Q. How many drinks would you say you had?
"A. I imagine I had four or five." (Tr. 110).
Where the owner, with the theoretical right of control over another driving his car, is a passenger therein in an accident when the ride is for his benefit or for the mutual benefit of himself and the driver, then, as to third persons involved in the accident, the negligence of the driver is imputed to the owner as that of an agent, and if a proximate cause of the accident, may either render the owner liable to the third party or constitute contributory negligence barring recovery by the owner from the third party, see Waguespack v. Savarese, La.App., 13 So.2d 726; Weitkam v. Johnston, La.App., 5 So.2d 582; Riggs v. F. Strauss & Son, La.App., 2 So.2d 501, see also Note, 12 La.Law Review 323; Pierrotti v. Huff Truck Lines, La.App. 1 Cir., 63 So.2d 886; Rodriguez v. State Farm Mut. Insurance Co., La.App., 88 So.2d 432; Martin v. Brown, 240 La. 674, 124 So.2d 904. Under the facts and circumstances of this case as well as the law of this state, we are of the opinion that Lester Johnson was the agent of J. D. Bell, and therefore the negligence of Lester Johnson is imputable to J. D. Bell.
The plaintiff was seriously and permanently injured as a result of this accident. He was first taken to the Eunice Hospital for emergency treatment and then transferred to Ochsner Clinic and Foundation Hospital in New Orleans, where he remained for more than seven weeks, until January 20, 1961, a period of more than seven weeks. His injuries were diagnosed as dislocation of the left hip with fracture of the acetabulum; rupture of the left patella tendon; injury to the left sciatic nerve. As of the date of the trial, the plaintiff had a residual paralysis of the extensor muscles of the left foot; mild limitation of flexion of the left knee; a healed fracture of the acetabulum and dislocation of the left hip; and a healed rupture of the patella tendon. His disability was rated as 25 to 30% of the left foot, and *417 he was required to wear a drop foot brace, although the evidence shows minimal inconvenience and pain.
During his hospitalization, plaintiff was placed in traction and fifteen pounds of weight applied to improve the dislocation of the hip and the position of the fracture of the acetabulum. After two weeks, surgery was performed to repair the rupture of the left patella tendon, and traction maintained until he was discharged from the hospital.
In Savoie v. Walker, La.App., 183 So. 530, the court awarded $5,500.00 to plaintiff who sustained fracture of the leg and tearing of ligaments of the right knee causing some instability of the knee. Plaintiff's gait was impaired and the use of a brace was required. In Hawkins v. Fidelity & Casualty Co. of New York, La.App., 74 So.2d 323, the court awarded a 26 year old man $3,000 for pain and suffering and $2,500.00 for a permanent disability of 10 to 15% use of the left leg. The injured person was a gardener, sub-par mentally both before and after the accident. The court also awarded loss of earnings and medical expenses. The plaintiff in the instant case sustained more painful and permanent injuries than the injured persons in Savoie case, supra, and the Hawkins case, supra.
After considering the facts and circumstances as disclosed by the evidence and awards in similar cases, we are of the opinion that the plaintiff should be entitled to recover an award of $10,000. See Matherne v. Crowther, La.App., 96 So.2d 89 and Smith v. Manufacturers Cas. Ins. Co., La. App., 83 So.2d 164.
For the reasons assigned the judgment of the trial court in favor of Service Fire Insurance Company of New York and Bennie Isser, defendants in reconvention, and against J. D. Bell, plaintiff in reconvention, dismissing the suit of plaintiffs in reconvention is affirmed. The judgment of the trial court in favor of defendant J. D. Bell and defendant J. E. Johnson, and against the Service Fire Insurance Company of New York and Bennie Isser dismissing the plaintiffs' suit at their cost is amended so as to award judgment in favor of the plaintiff Bennie Isser and against the defendant J. D. Bell and the defendant J. E. Johnson in solido in the amount of $10,000 together with legal interest from date of judicial demand until paid; defendants to pay all costs.
Amended and affirmed.