138 So.2d 405 (1962)
Francis A. BREAUX, Plaintiff-Appellant,
v.
Ivy VALIN et al., Defendants-Appellees.
No. 493.
Court of Appeal of Louisiana, Third Circuit.
March 8, 1962.
*406 Mouton & Mouton, by F. Xavier Mouton and F. Fred Mouton, Lafayette, for plaintiff-appellant.
Dubuisson & Dubuisson, by William A. Brinkhaus, and Edward Dubuisson, Opelousas, for defendants-appellees.
Before TATE, FRUGÉ, and CULPEPPER, JJ.
TATE, Judge.
On September 20, 1957 a Dodge pickup truck collided with a Pontiac automobile which was owned and being driven by the plaintiff Breaux. Breaux brings this suit to recover damages resulting from this accident. Made defendants are (a) Ivy Valin, owner of the Dodge truck; (b) Miss Rita Valin, his major daughter, who was driving it on a business errand for her father at the time of the accident; and (c) the liability insurer of the truck, the Southern Farm Bureau Casualty Insurance Company.
The plaintiff appeals from the dismissal, after trial, of his suit.
On a clear dry afternoon, the accident occurred on a straight stretch on U. S. Highway 167, about one-fourth mile north of Opelousas. Prior to the accident, the plaintiff Breaux was driving south in his own right lane at a speed of approximately 25 miles per hour. The northbound defendant driver's pickup truck was approaching from the opposite direction, but, when it was about thirty feet in front of the plaintiff, the truck suddenly veered into Breaux' lane, causing a head-on collision.
The pleaded defense is that the defendants' driver was not negligent in suddenly veering into plaintiff's lane because her action was occasioned by an emergency not of her creation. The driver testified that, when a preceding car turned into the parking lot of a grocery store, she suddenly saw a child on the far side of the parking lot running towards the road; she thereupon touched her brakes to slow down in the event the child continued to run into the road, but when "I placed my foot on the brake pedal not to stop, but to slow down * * * and then the truck swerved * * * very suddenly * * * to the left" into the plaintiff's lane. Tr. 136.
This witness also described the accident by stating that, when she saw the child, "I put my foot to the brakes, not to stop but to slow down just in case the child would continue on to the highway and when I hit the brake pedal is when I just lost control of the automobile and it went into the other lane." Tr. 126-127.
The defendants' driver further stated that she had never had trouble with the brakes of the 1951 Dodge pickup before and that they were in "perfect condition to my knowledge and to my father's knowledge." Tr. 125.
Neither the plaintiff nor two witnesses who were in the automobile immediately following the plaintiff's Pontiac saw the child or anyone else on the shoulder or on the road either before or after the accident. Neither the defendant owner of the truck nor any mechanic testified concerning the condition of the brakes prior to and after the accident.
We do not think that the defendant driver's uncorroborated testimony has satisfied the heavy burden of proof and has proved the high standard of care necessary to exculpate from actionable negligence contributing to the accident a driver who suddenly veers into the wrong lane and collides with a motorist legally approaching in it from the opposite direction, when this motorist is himself free of negligence contributing to the accident. Under such circumstances, a driver who on his wrong side of the road collides with another car which is in its correct lane of traffic is required to exculpate himself of any fault, however slight, contributing to the accident. Rizley v. Cutrer, 232 La. 655, 95 So.2d 139; Noland v. Liberty Mut. Ins. Co., 232 La. 569, 94 So.2d 671; Carhee v.
*407 Scott, La.App. 2 Cir., 104 So.2d 236, certiorari denied; Cormier v. Southern Farm Bureau Cas. Ins. Co., La.App. 1 Cir., 94 So.2d 901.
As the cited decisions show, a driver is under a duty to exercise more than ordinary care in order to avoid causing a collision by invading the contrary lane of traffic. Such behavior by the invading driver is so unforeseeable by, and creates such immediate and great hazard to, oncoming motorists who are legally approaching in their own right lane of traffic, as to require care of the highest degree and extraordinary effort on the part of the invading driver to avoid the almost certain danger of serious injury which will result if he suddenly crosses into the lane of traffic reserved for traffic approaching from the opposite direction.
That this is the standard of care and the burden of proof by which the negligence of the invading driver is judged may be seen from the statements in Rizley v. Cutrer, cited above, the latest expression by our Supreme Court on the subject. There, the defendant Cutrer collided with the plaintiff's vehicle in the latter's lane of traffic. The trial court and the court of appeal held that Cutrer was not liable because the accident was unavoidable due to an unforeseeable defect in the highway which caused him to skid into the opposite lane. The Supreme Court reversed, stating, inter alia:
"Since the primary cause of the collision was Cutrer's act in driving his car into that part of the roadway reserved exclusively for traffic proceeding from the opposite direction, a mere statement of the accident makes out a prima facie case of negligence against Cutrer and, therefore, it was incumbent upon defendants to show by clear and convincing evidence that Cutrer's sudden presence in plaintiff's traffic lane was due to unexpected and unforeseen circumstances over which he had no control and that he did not in any particular contribute to the mishap. See Schick v. Jenevein, 145 La. 333, 82 So. 360; Miller v. Hayes, La.App., 29 So.2d 396 and Noland v. Liberty Mutual Ins. Co., 232 La. 569, 94 So.2d 671. [95 So.2d 140-41]
"* * * Cutrer, having caused the accident by leaving his own traffic lane, is presumed guilty of negligence and the onus rested on him to demonstrate that the accident resulted from such a state of unforeseeable circumstances beyond his control (and to which he did not contribute), that he could not extricate himself, despite the efficient use of all protective measures at his command. In other words, it was his burden to show that he was not guilty of any dereliction, however slight, which may have had causal connection with the accident. We say this because it seems only reasonable to resolve that a motorist owes to the traveling public the duty of remaining in his own lane of traffic and, when he undertakes to enter the lane devoted to approaching traffic, he must be held strictly accountable for all damages resulting therefrom unless he clearly exhibits that his conduct in no wise contributed to the accident. By this, of course, we do not mean that such a motorist is the insurer of the safety of those injured in an accident such as the one in the instant case but only that, in order to be exonerated, he must establish his freedom from all fault by convincing proof. [95 So.2d 142]"
Thus, even accepting the defendants' driver's testimony in the sense most favorable to her defense, we doubt that her action in applying the brakes in such a manner as to cause her car to suddenly swerve into the immediate path of traffic in the other lane, shows that she was exercising the extra-ordinary effort required of her to avoid colliding with opposite-bound traffic in its own lane, however much *408 such testimony may indicate the exercise of ordinary care required to avoid the possibility of striking the child as he entered her lane. But, furtherassuming that negligent acts affecting third persons themselves free of negligence may be excused by a sudden emergency, we do not believe that the defendants' driver's testimony by itself preponderantly proves under the circumstances that she was suddenly faced with a real emergency rather than a mistaken appreciation of an imaginary danger which did not require any heroic response (see Commercial Standard Insurance Co. v. Johnson, 228 La. 272, 82 So.2d 8; Nicolle v. Gayden, La.App. 1 Cir., 83 So.2d 680), for none of the other witnesses observed the child near the roadway. That is, considering the burden of proof upon her, her uncorroborated testimony may indicate the unobservant driver's sudden glimpse of an imagined terror, rather than a reasonable response to a true emergency which could not have been observed sooner by the exercise of ordinary care.
In addition, the defendant herself, without corroboration, testified that the accident resulted from a sudden and unanticipated catching of her brakes. She produced no corroborating testimony to prove a latent brake defect, although in her testimony she indicated that she had consulted a mechanic following the accident and that her father knew the brakes were in perfect condition prior to the accident.
Not called to the attention of the trial court was Louisiana jurisprudence holding that the unsupported testimony of the driver that the brakes suddenly failed due to a latent defect is not sufficient evidence to prove that the accident was unavoidable for such reason. Trascher v. Eagle Indemnity Co., La.App.Orl., 48 So.2d 695; Hassell v. Colletti, La.App.Orl., 12 So.2d 31. These cases indicate that for such defense to be valid, in addition to his own statement, the driver should by testimony of a mechanic or other competent evidence prove that the defect in the brakes really existed, as well as its nature, and that (insofar as the owner is concerned) such defect could not reasonably have been discovered and remedied by proper inspection.
An honest witness may indeed truthfully feel that the failure of his brakes to react as he desperately desired them to during the split-seconds of sudden accident, was the cause of the accident instead of his own inattention or lack of control; but, in addition to his own naturally exculpating explanation of this brake failure as the cause of the accident, he must thus produce objective proof that this indeed is the cause of the accident, which the evidence otherwise indicates to have been caused by negligence on his part. As stated by the Orleans Court of Appeal: "There is authority for the proposition that the driver of a motor vehicle is not responsible for latent defects in his car, where he exercises reasonable care in having the car inspected. However, for that doctrine to be a valid defense, the proof submitted must be so strong as to exclude any other reasonable hypothesis with reference to the cause of the accident, except that it resulted solely from the alleged defects. Hassell v. Colletti, La.App., 12 So. 2d 31," Trascher v. Eagle Indemnity Co., La.App.Orl., 48 So.2d 695, 698, 699.
We therefore hold that the present accident was caused by the defendants' driver's negligence in crossing over into the plaintiff Breaux' traffic lane and there colliding with his vehicle. The defendants are therefore liable for damages sustained by Breaux as a result of the accident.

Quantum.
As a result of the accident, the plaintiff was thrown against the steering wheel and metal mirror with sufficient force to bend the former. The evidence shows that, had it not been for a safety belt, the personal injuries would have been far more serious.
*409 Fortunately, however, the most serious result of the accident was only a bruising injury of the chest wall; this caused fairly severe pain requiring bed rest for about a week, and disabling pain for a further two weeks, but the pain gradually subsided without residual by January, about four months after the accident. The minor bruises, contusions, and lacerations cleared completely within a short time.
The only permanent residual of the accident is a fairly inconspicuous scar just below the hair line on the left side of the plaintiff's forehead, resulting from a laceration of the scalp which was sutured right after the accident. (The plaintiff is a married man forty years of age.)
For these personal injuries, we think the plaintiff is entitled to recover $1500. McCandless v. Southern Bell Tel. & Tel. Co., 239 La. 983, 120 So.2d 501; Sittig v. Cooper, La.App. 3 Cir., 127 So.2d 559; Rodriguez v. LeBlanc, La.App. 1 Cir., 120 So.2d 103; Distefano v. Delta Fire & Cas. Co., La.App. 1 Cir., 98 So.2d 310.
In addition, the plaintiff's testimony, corroborated by his doctor's estimate of his disability, shows that he was unable to work for three weeks after the accident. The plaintiff was a travelling salesman compensated by commissions on the sales he made. He produced his federal income tax returns showing average net earnings as salesman of slightly over $250 per week during the year of the accident, with comparable weekly earnings during the years preceding and succeeding it.
Commission salesmen may recover damages for losses of earnings during disability caused by a negligently-caused accident, and such awards are properly based upon the average weekly or monthly earnings of the salesmen when uninjured. Wilkins v. Featherstone Transfer Co., 156 La. 601, 100 So. 732; Anagosti v. Toye Bros. Yellow Cab Co., La.App.Orl., 56 So. 2d 166; Lynch v. Fisher, La.App. 2 Cir., 41 So.2d 692; see also, Rhymes v. Guidry, La.App. 1 Cir., 84 So.2d 634; Frye v. Joe Gold Pipe & Supply Co., La.App. 2 Cir., 50 So.2d 38. In the absence of contradiction or other suspicious circumstances, the plaintiff's testimony of his three weeks' loss of earnings, corroborated by his physician's testimony of three weeks' disability and by income tax returns from which average weekly earnings may be computed, reasonably proves such tort-caused loss. See above-cited cases and Stevens v. Dowden, La.App. 3 Cir., 125 So.2d 234. Under the record, an award of $750 for loss of earnings during the three weeks disability at home will, we think, adequately compensate the plaintiff for such damages.
The proven medical expenses incurred as a result of the plaintiff's personal injuries total $114. (These are: Lafayette Medical Group, $40; Lafond ambulance, $15; Dr. Shute, $25; Dr. Palmintier, $25; Opelousas General Hospital, $9.00.)
The plaintiff also claims recovery for the loss in value of his car beyond the amount he had agreed with his collision insurer to accept in the settlement of the damages caused to it. However, the plaintiff's own uncorroborated testimony of this additional loss does not in our opinion sufficiently prove it, and it will be disallowed.

Decree.
For the foregoing reasons, judgment is rendered in favor of the plaintiff Francis A. Breaux and against the defendants Ivy Valin, Rita M. Valin, and the Southern Farm Bureau Casualty Insurance Company holding them liable in solido for the full sum of Two Thousand Three Hundred Sixty Four Dollars ($2364.), together with legal interest thereon from date of judicial demand until paid. The defendants-appellees are taxed with all costs of this appeal and of these proceedings, including the deposition fee in the amount of $50.00, plus stenographic costs, incurred in the taking of the deposition of Dr. D. J. Palmintier.
Reversed and rendered.