REID, Judge.
This is a suit by Erwin R. Davis, as petitioner against O. C. Roberts and his insurer, Southern Farm Bureau Casualty Insurance Company and L. L. James and his insurer, Hartford Accident and Indemnity Company, for damages resulting from an automobile accident. The Lower Court rendered judgment in favor of plaintiff against defendants L. L. James and his insurer, Hartford Accident and Indemnity Company in the sum of $4014.46 together with legal interest from date of judicial demand until paid and all costs. Plaintiff’s suit was dismissed as to O. C. Roberts and Southern Farm Bureau Casualty Insurance Company.
A companion suit was filed by Southern Farm Bureau Casualty Company as petitioner against L. L. James and his insurer Hartford Accident and Indemnity Company as defendants wherein petitioner seeks reimbursement from defendants for the payments made by petitioner to Warren C. Holden and J. B. Broussard who were passengers in the Roberts automobile. The Lower Court awarded judgment in favor of plaintiff and against defendants in this companion suit.
Plaintiff in the original suit, Erwin R. Davis, appealed from the judgment as did the two defendants, L. L. James and Hartford Accident and Indemnity Company.
The accident involving the automobiles of Davis and Roberts occurred on February 2, 1961 at approximately 8:00 A.M. on State Route 66 between Angola and Bains, Louisiana. The road at the point where the *513 accident occurred runs generally north and south and is a two lane black top. A slight rain was falling at the time of the accident.
Plaintiff Davis, driving a 1959 Chevrolet Impala, was traveling south on State Highway 66 from Angola toward Bains, Louisiana. Roberts, accompanied by Warren C. Holden and J. B. Broussard, was driving a Pontiac automobile and was proceeding north on the same Highway, going toward Angola. The evidence discloses Davis was driving at a speed of from 50 to 55 miles an hour and Roberts was driving his car between 40 and 45 miles an hour. Roberts was following a truck preceding ahead of him in a northerly direction toward Angola.
Davis testified as he was approaching the truck the Roberts car, either in checking approaching traffic or in a move to pass the truck pulled into his lane of traffic, thus causing the accident. Defendant Roberts, corroborated by his passenger Warren C. Holden, maintained he had been following the truck for some time, possibly 15 or 20 minutes at a speed of 40 or 45 miles an hour. They went over one hill, dipped down and got to the top of a second hill when they noticed the truck had apparently slowed down and at which time they were only about 30 feet from the rear of the truck. Defendant Roberts applied his brakes, the car jack knifed and headed straight into the other lane of traffic at an angle of approximately 45 degrees. He testified in braking his vehicle to slow down the brake on the left front wheel grabbed, causing the automobile to veer to the left into the immediate path of Davis’ automobile. He denied any previous trouble with his car, or its brakes. Sergeant J. L. Bryant, a State Trooper, who drove upon the accident scene just minutes after the impact, as well as plaintiff Davis, confirmed that Roberts told them at the scene that his brakes had stuck, causing him to veer to the left.
The Davis car pulled to the right as far as possible to avoid the accident. Davis maintained that Roberts attempted to pass the truck and then apparently applied his brakes to pull back. At any rate the accident definitely happened in the Davis lane of traffic and the right front of Roberts’ car struck the center left front of Davis’ car. Davis’ car came to rest in its lane of traffic with its front end in the ditch. The Roberts car came to rest ahead in a southerly direction, which was the direction from which it was traveling.
The evidence shows that the accident occurred because the north bound Roberts automobile invaded the south bound lane, and there collided with the south bound Davis automobile, making out a “prima facie case of negligence against Roberts.” Our Supreme Court in Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957) held:
“Since the primary cause of the collision was Cutrer’s act in driving his car into that part of the roadway reserved exclusively for traffic proceeding from the opposite direction, a mere statement of the accident makes out a prima facie case of negligence against Cutrer and, therefore, it was incumbent upon defendants to show by clear and convincing evidence that Cutrer’s sudden presence in plaintiff’s traffic lane was due to unexpected and unforeseen circumstances over which he had no control and that he did not in any particular contribute to the mishap. See Schick v. Jenevein, 145 La. 333, 82 So. 360; Miller v. Hayes, La.App., 29 So.2d 396 and Noland v. Liberty Mutual Ins. Co., 232 La. 569, 94 So.2d 671.”
See also Breaux v. Valin, 138 So.2d 405 (La.App.1962).
Defendant Roberts and his insurer, relying on the declaration the brake had improperly performed, retained Mr. Alvin Doyle, an automobile consultant, to examine the Roberts vehicle. Mr. Doyle testified the grabbing sensation testified to by Mr. Roberts was caused by grease on the left front brake drum, the presence of which *514 was • explained as resulting from improper and excessive greasing of the joint. He testified further because of the heating or friction a concentration of grease was converted into oil which in turn entered the brake at the edge of the brake drum and backing plate on to the brake shoe. This grease in an oil state then soaked into the brake lining,, resulting in dissipation of the ends of the brake lining through heat and ultimately causing a grabbing condition or an absolute locking of the brake. Mr. Doyle testified it would be impossible to state the length of time necessary to cause the grabbing, and that the brakes would function properly until such time. He further testified the accumulation of grease was so obvious as to merit the attention of any conscientious grease man and to call for replacement as well as removal of the grease deposits.
The Roberts automobile had been serviced by the service station operated by defendant L. L. James. One of the service men performed the last greasing operation on the Roberts automobile but he was no longer employed by Mr. James and did not testify.
To rebut this testimony defendant produced two experts, Mr. Leo Bickford and Mr. George Daniel Wilson. Mr. Bickford had worked for Pontiac dealers for a period of sixteen years and was known as a senior service craftsman. He had attended General Motors Training Center. Mr. Wilson was an approved automotive appraiser. He had attended the General Motors Institute at Flint, Michigan and took a course of instructions in collision damages. Both testified in their opinion the grease that accumulated on a ball joint and vacuum plate could not migrate into the brake drum.
There was no testimony other than Mr. Doyle’s to corroborate that he dismantled the braking mechanism of the left front wheel, or to the presence of grease in the same. His testimony is rebutted as to the greas« getting into the brake system by Mr. Bickford and Mr. Wilson.
Since the plaintiff Davis has proven the accident happened in his lane of' traffic and he was in no way negligent a prima facie case was made out against defendant Roberts and his insurer, Southern Farm Bureau Casualty Company. We do not feel that they have overcome this prima facie case by the uncorroborated testimony of Mr. Doyle. It is, therefore, concluded that our Learned Brother of the Lower Court committed error in dismissing plaintiff’s suit and rejecting his demands against Roberts and his insurer, and rendering judgment against defendant James and his insurer.
This brings us to the question of quantum. The Lower Court awarded Davis damages in the suit of $3500.00 for physical injuries, for specific damages in the sum of $464.49, plus recovery of $50.00 deductible under his collision insurance policy, making a total award of $4014.49. Mr. Davis as a result of the accident received an injury to the cervical musculature in the nature of a strain, contusions of head, shoulder and chest area. Although he complained of a leg injury it appears that this condition existed prior to the accident as did a pre-existing arthritic condition in the neck which, however, was aggravated by the accident. He was hospitalized for six days, wore a collar around his neck for a period of some ten months, and was placed in traction in his home. On the date of the trial Mr. Davis still complained of pain in his neck as well as frequent headaches and inability to perform his duties as a farmer as a result of neck injuries. Mr. Davis disposed of his farm between the time of the accident and the trial of this case, claiming he could no longer perform his duties and operate the farm as a result of the injuries. Dr. Campanella testified Mr. Davis had apparently recovered from all injuries except the neck pain which he felt could give occasional pain and discomfort for a period of two or three years.
After reviewing all the testimony we believe that the award by the Lower Court *515 for personal injuries was inadequate and should be increased to the sum of $5000.00, increasing' the total award to $5514.49.
For these reasons it is ordered that the judgment of the Lower Court be reversed and judgment rendered in favor of Erwin R. Davis and against defendants, O. C. Roberts and Southern Farm Bureau Casualty Company in solido in the sum of $5514.49 and all costs of this suit, including the costs of this appeal. It is further ordered there be judgment in favor of defendants, L. L. James and his insurer, Hartford Accident and Indemnity Company rejecting plaintiff’s demands as to these two defendants.
Reversed and rendered.