COVINGTON, Judge.
This action was instituted by Benny Vaughn to recover damages sustained by him in an automobile accident. It occurred at about 6:10 P.M., October 30, 1973, on *305 Louisiana Highway 75 near Bayou Pigeon, in Iberville Parish. Vaughn was a guest passenger in the car owned and being operated by Hebert and insured by Travelers.
After trial on the merits, the judge concluded that Hebert was confronted with a sudden emergency not of his own making and to which he did not contribute and, therefore, that the defendants were not liable. From that decision, plaintiff took a devolutive appeal. We affirm.
Hebert was traveling in a southerly direction on the two-lane, hard-surfaced highway. An unidentified vehicle was seen approaching them, coming out of a curve and at least partially on Hebert’s side of the road. After observing the car for a few moments, and it not having returned to its proper lane of traffic, Hebert went off the blacktop on the west side. Upon attempting to pull back onto the road he lost control, went down the levee into a canal and hit a tree, resulting in the plaintiff’s injuries.
The appellant did not set forth an assignment of alleged errors, but prosecuted this appeal to urge that the doctrine of sudden emergency is inapplicable in this case.
However, the testimony elicited at the trial amply supports the finding of the trial court.
Taking the testimony most favorable to the appellant, the approaching vehicle was about a thousand feet away and at least partially on Hebert’s side of the road when it was first seen. Hebert continued in his lane of traffic until the vehicles were about 300 feet apart, when it became apparent to him that “ I had to get out of his way.”
On direct examination, Vaughn testified, N.T. 39:
“Q. Would you tell me in your own words how this accident happened, to the best o-f your knowledge ?
A. Well, we were heading south on La. 75 when we noticed this car coming partly in our way, on our side of the road. Well, as we kept getting closer, he stayed on that side. So as we got closer, we had to get over on the shoulder to avoid hitting him.”
Then, on cross-examination, N.T. 49-50:
“Q. While he [the unidentified motorist] was coming to you, did you- — before Randy started to turn off the road — did you feel that an accident was going to happen ?
[Colloquy between counsel and the Court]
THE WITNESS: Yes, I thought we -were.”
“Q. And not much time happened in between the time you felt that the car was going to hit you and the time Randy pulled off the side of the road, did it?
A. Not that much, no.
Q. Everything was happening pretty fast, wasn’t it ?
A. Yes.”
Also, Hebert testified, N.T. 27:
“Q. All right. Tell me, Randy, what happened after you got out of the curve and you went into the straightaway ? Tell me what happened the best you can remember.
A. Let’s see. I seen — had a car coming around the curve and he had his bright lights on.
Q. Coming around the curve going north ?
A. Coming towards me.
Q. Right. You were going south?
A. Right. And when I seen he was on my side of the road and by the time I seen him, I didn’t have nothing to do but get out of his way.”
*306 And, N.T. 30:
“Q. Randy, after you pulled off the road, you stated you tried to pull back on the road. Why did you try to- pull back on the road ?
A'. Why?
Q. Yes.
A. I had a canal there, and I didn’t want to go in it.”
Admittedly, after Hebert pulled off the blacktop, he then tried to pull back onto it, lost control of the car and the plaintiff-appellant sustained injuries.
In his admirably diligent effort to ascertain all of the facts, during the course of the trial the Judge, with counsel, the court reporter, and Messrs. Vaughn and Hebert, went to the scene of the mishap and testimony was taken there from the latter two gentlemen.
We conclude that Randy Hebert was faced with a sudden emergency created entirely by the gross negligence of the approaching motorist. Under these circumstances, it is the settled jurisprudence of this state that a person is not obligated to exercise the same degree of care or judgment as is required under ordinary circumstances. In the emergency thus faced by Hebert his actions were reasonable and justified. A mistake of judgment or failure to adopt the best or wisest course for avoiding injury does not necessarily result in a finding of negligence. To contend otherwise is to attempt to exact hindsight instead of foresight from a motorist faced with a sudden emergency ; Fouche v. St. Paul Fire & Marine Insurance Co., 153 So.2d 180 (La.App. 2 Cir. 1963).
Appellant cites several cases to support his position, including Stonewall Insurance Company v. Cross, 244 So.2d 327 (La.App. 3 Cir. 1971); Robert v. Travelers Indemnity Company, 196 So.2d 657 (La.App. 1 Cir. 1967); and Noland v. Liberty Mutual Insurance Company, 232 La. 569, 94 So.2d 671 (1957). However, these cases are factually inapposite to the instant one.
Rather, more analogous is Whitehead v. Cruse, 279 So.2d 802 (La.App. 2 Cir. 1973), at page 803:
“The driver of a motor vehicle who is confronted with a sudden emergency or danger not of his own making and to which he did not contribute, will not be held liable for error of judgment committed by him in the emergency providing he exercises ordinary prudence and reasonable care under the circumstances. Odom v. Texas Farm Products Co., 229 So.2d 118 (La.App. 2d Cir. 1970) and cases cited therein.”
The judgment is affirmed at appellant’s cost.
AFFIRMED.