149 So.2d 669 (1963)
Eugene M. BAILEY, Appellant,
v.
NATIONAL SURETY CORPORATION, Appellee.
Sam NEWMAN et al., Appellants,
v.
Eugene M. BAILEY et al., Appellees.
Nos. 5700, 5701.
Court of Appeal of Louisiana, First Circuit.
January 18, 1963.
As Corrected on Denial of Rehearing February 22, 1963.
Certiorari Refused April 17, 1963.
*670 Sanders, Miller, Downing, Rubin & Kean, by George C. Herget, Jr., Baton Rouge, for appellant.
Hynes & Lane by Horace C. Lane, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, LANDRY and REID, JJ.
ELLIS, Judge.
These suits arise out of an intersectional collision which occurred on January 3, 1961 between a 1958 Edsel automobile owned by Claude Morgan and being operated by Gloria Blaylock, wife of Sam Newman, and a 1958 Buick automobile owned and operated by Eugene M. Bailey. The accident occurred at the intersection of Stanford Avenue, Perkins Road and South Acadian Thruway in the City of Baton Rouge, Louisiana, at approximately 6:45 P. M. on January 3, 1961.
Eugene M. Bailey instituted suit in the Nineteenth Judicial District Court, Parish of East Baton Rouge, against National Surety Corporation, the liability insurer of the automobile being operated by Mrs. Newman, for damages arising out of the accident. Consequently, Sam Newman and his wife, Gloria Blaylock Newman, Claude Morgan, the owner of the 1958 Edsel operated by Mrs. Newman, and National Surety Corporation, the collision insurer of the 1958 Edsel instituted suit against Eugene M. Bailey and his liability insurer, State Farm Mutual Automobile Insurance Company, *671 seeking a judgment for damages in the amount of $55,424.88.
The two cases were consolidated for trial and after a hearing on the merits the District Judge rendered judgment in favor of the defendants in both suits on the ground that both parties involved in the collision were negligent. From this judgment Sam Newman, Gloria Blaylock Newman, Claude Morgan, Eugene M. Bailey and National Surety Corporation have prosecuted this appeal.
Gloria Blaylock Newman's version of the accident was that she was proceeding north on Stanford Avenue approximately 25 to 30 miles per hour; that Eugene M. Bailey was proceeding south on South Acadian Thruway, both parties approaching the intersection of these streets with Perkins Road.
It is not contested that the intersection of Stanford Avenue and South Acadian Thruway with Perkins Road is a controlled intersection and at the time of the accident the light was green in favor of north-south traffic and more specifically in favor of both plaintiff, Mrs. Gloria Newman, and defendant, Eugene M. Bailey.
Perkins road runs generally east and west and Stanford Avenue runs north and south into, but does not cross, Perkins Road. Acadian Thruway runs north and south into Perkins Road, but does not cross it. Acadian Thruway is offset to the east of Stanford Avenue at the juncture of Perkins Road by a distance equal to approximately the width of one traffic lane. There is a painted white line which delineates the offset and divides the north and south traffic lanes. At no time prior to the point of impact was the Newman car out of its northbound lane of travel. However, the left front portion of Bailey's automobile had proceeded out of its proper lane of travel and into the north lane.
Mrs. Newman contends that as she was approaching the intersection intending to go across Perkins Road onto South Acadian Thruway, the car driven by Mr. Bailey, coming from the opposite direction, suddenly and without any warning began turning to his left attempting to make a left turn into Perkins Road. Mrs. Newman further testified that upon observing defendant, Bailey, beginning a left turn she immediately applied the brakes of the vehicle which she was driving in an attempt to avoid the collision. When the brakes were thus applied the car skidded straight and the accident resulted. Plaintiff, Mrs. Newman, contends that defendant, Bailey, gave no signal or other indication that he was going to turn left, and that she had no knowledge that Mr. Bailey was intending to turn left until he suddenly began turning into the path of her vehicle. Mrs. Newman contends that if Bailey had come to a stop as testified that it was immediately prior to the accident and that she had already applied her brakes and was skidding into him. Defendant Bailey contends that he arrived at the intesection intending to make a left turn; that he observed Mrs. Newman across the intersection, and brought his vehicle to a stop; that Mrs. Newman was proceeding at an excessive rate of speed and lost control of her vehicle striking him almost head-on.
The point of impact occurred with the front of the defendant Bailey's vehicle approximately one and a half to two feet across his center line and projected into the north bound lane of traffic. The only eye witness to the accident was a Mr. Roppolo who was traveling west on Perkins Road. As he arrived at the intersection and approached the traffic light, it was red. Mr. Roppolo testified that as he drove up to the light he noticed that the automobile operated by defendant Bailey was approaching, "or rather had approached the intersection to make a left turn." He further testified that he could tell that defendant was going to make a left turn because he was angling to the left and did not recall having observed any signals given by defendant, Mr. Roppolo testified that he also observed the automobile operated by Mrs. Newman when she was approximately fifty feet from the *672 intersection, and that he estimated her speed at about 50 miles per hour; that at the last minute, plaintiff, Mrs. Newman, put on her brakes and skidded acress Perkins Road into the defendant Bailey. On cross examination, Mr. Roppolo testified that the accident happened very guickly after he first observed the vehicle, and that he was not sure in his estimates of speed and distances. A statement was produced wherein Mr. Roppolo had estimated the speed of plaintiff's vehicle at about 40 miles per hour.
It was stipulated in the trial court that the approximate stopping distance, including reaction distance and net braking distance under average conditions for northbound traffic on Stanford Avenue, through the intersection with Perkins Road and on to South Acadian Thruway at the date and time of the accident was approximately 83 feet for automobiles traveling 30 miles per hour. It was further established that the speed limit at the place of the accident was 30 miles per hour for vehicular traffic, and that the point of impact was approximately nine feet north of the northern line of Perkins Road. At the point of the intersection, Perkins Road is approximately 21 feet in width. Therefore, it appears that the distance from the point of impact to the southern line of Perkins Road is approximately 30 feet.
From our consideration of the record as a whole we are convinced that defendant Bailey was negligent in starting to make a left turn, or giving the appearance that he was going to make a left turn, in front of plaintiff's vehicle and this negligence was the sole proximate cause of the accident and resulting injuries. It is hornbook law that a left turn is one of the most potentially dangerous maneuvers a motorist is called upon to make and that before making the left turn one must ascertain that the maneuver can be executed safely and that it can be made without interferring with other traffic lawfully using the roadway. In Washington Fire & Marine Insurance Co. v. Fireman's Insurance Company, 232 La. 379, 94 So.2d 295 (1957), Louisiana Supreme Court stated as follows:
"The cases are legion which hold that before making a left turn the driver of an automobile must ascertain that he may do so safely; not only is this cardinal rule of the road founded on common sense, but in our State is a positive enactment, incorporated in the Revised Statutes as R.S. 32:235, by the terms of which it is the mandatory duty of the driver of any vehicle on the highways of this State to ascertain, before turning upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed; and said driver `shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.'"
Further, it is a well settled principle of Louisiana jurisprudence that where a collision results from one's act of driving his vehicle into that part of the roadway reserved exclusively for traffic proceeding from the opposite direction, the presumption is that the driver of the vehicle determined to be in the wrong lane of traffic is negligent, and that he has the burden of showing that the collision was not caused by his negligence or that there was justifiable circumstances which would excuse his conduct. Noland v. Liberty Mutual Insurance Co., 232 La. 569, 94 So.2d 671 (1957); Daniel v. Reed, 137 So.2d 645, La. App. 2nd Cir. (1962); Coody v. Nicholson, 142 So.2d 583, La.App. 2nd Cir. (1962); Breaux v. Valin, 138 So.2d 405; La.App. 3rd Cir. (1962); and Territo v. Carter, 138 So.2d 218, La.App. 4th Cir. (1962).
By defendant Bailey's own testimony it was established that he was intending to make a left turn and that had actually begun turning his automobile into the opposite lane of traffic. This action on the part of defendant without a signal of any kind presented plaintiff with an unexpected situation and created a sudden emergency *673 whereby she immediately applied her brakes, and skidded into defendant's vehicle. In such a situation it is established jurisprudence that a driver is not held strictly accountable for his actions except to react as any other reasonable person would react under similar circumstances. See Romans v. New Amsterdam Casualty Company, 137 So.2d 82 (La.App. 1st Cir., 1962). Plaintiff, Mrs. Newman, might have guided her car around the defendant's car, thereby avoiding the collision had the situation been normal. However, the course of conduct prudent under normal circumstances is not necessarily the course of conduct a person will take when presented with a sudden emergency. An immediate application of brakes in a situation as presented the plaintiff, Mrs. Newman, in the instant case is a reasonable reaction to be expected by a normally prudent driver under similar circumstances.
Counsel for defendant, Bailey, places considerable emphasis on the testimony of defendant Bailey that he estimated plaintiff's speed at about 45 or 50 miles per hour, and Mr. Roppolo's estimate in his testimony of approximately 50 miles per hour. We have previously noted that the speed limit in the block where Mrs. Newman was driving was 35 miles per hour. On direct examination, Mrs. Newman testified that she approached the intersection going between 25 to 30 miles per hour. On cross examination, Mr. Roppolo testified that in an earlier statement he was of the opinion that plaintiff was going between 40 and 50 miles per hour. He further testified that he was a poor judge of speed and distance.
It was stipulated in the trial court that the approximate stopping distance, including reaction distance and net braking distance under average conditions for traffic under the circumstances, was approximately 83 feet for automobiles traveling 30 miles per hour. The point of impact was approximately 9 feet north of the northern line of Perkins Road and the width of Perkins Road at this point was established to be 21 feet. Therefore, the distance from the point of impact to the southern line of Perkins Road was approximately 30 feet. Hypothetically, plaintiff would have had to observe the maneuver or apparent maneuver of defendant while she was approximately 53 feet from the southern line of Perkins Road and immediately applied her brakes to successfully avoid the accident if she had been traveling at a speed of 30 miles per hour. Considering that a speed of 30 miles per hour is five miles less than the legal speed limit, the plaintiff's testimony that she observed the apparent maneuver of defendant when she was approximately 8 feet from the southern line of Perkins Road, or at most a total distance of approximately 38 feet from defendant, it was impossible for plaintiff to stop her car and avoid the accident. Bailey created a sudden emergency. However, we are satisfied from the evidence that plaintiff was not exceeding the speed limit. Even if plaintiff was, in fact, proceeding at a speed in excess of 35 miles per hour, it is well established that a speed beyond a fixed speed limit does not constitute contributory negligence where it has no causal connection with the accident in question. Roberts v. London Guarantee & Accident Co., 140 So.2d 770 (La.App. 2d Cir., 1962), Bergeron v. Hetherwick, 140 So.2d 440, (La. App. 1st Cir., 1962), and Levy v. St. Paul-Mercury Indemnity Co., 124 So.2d 143 (La. App. 4th Cir., 1960).
In summarizing, we feel that the act of defendant Bailey in turning into the opposite lane of traffic and stopping created a sudden emergency wherein plaintiff reacted as an ordinary prudent person would have reacted presented with such a sudden emergency by immediately applying her brakes and skidding into defendant, even though defendant had stopped his automobile. This we feel would have happened regardless of whether or not plaintiff was proceeding at 30 miles per hour or at a speed in excess of 30 miles per hour and even in excess of 35 miles per hour.
As to quantum of damages, it was stipulated in the trial court that if plaintiffs, *674 Claude Morgan and National Surety Corporation, were entitled to recover property damage, the amount of damage would be $100.00 for Claude Morgan and $291.04 for National Surety Corporation. It was further stipulated that in the event Sam Newman was entitled to recover as head and master of the community with Gloria Blaylock Newman, the amount of special damages would be the sum of $96.00 for Dr. James L. Coffee, the sum of $15.00 for Dr. Howard Hansen, and drugs and medicine totalling $22.84.
On this appeal, the only two items in serious contest are the sum of $50,000.00 asked by plaintiff, Mrs. Newman, for pain, suffering, etc., and $5,000.00 sought by plaintiff, Sam Newman, as head and master of the community to cover future medical expenses.
The only medical evidence in the record is two reports by Dr. James L. Coffee, Oral Surgeon, and one report by Dr. Howard Hansen, both of Baton Rouge, Louisiana. Dr. Coffee's first report set out that plaintiff, Mrs. Newman, had received a rather severe blow to the upper lip and anterior aveolar ridge, the upper lip was quite swollen and plaintiff was spitting blood. Dr. Coffee's examination revealed that plaintiff had a severely contused upper lip, that the gum tissue extending along the anterior alveolar was severely torn in many directions and pushed up under the lip and nose, and that the two central incisor teeth were slightly loosened, and that the labial gum tissue and mucosa was pushed up approximately ½ inch to ¾ inch exposing the labial cortex of the alveolar ridge. Further, there was a fracture of the anterior nasal spine. Dr. Coffee's report states that the tissue was put back in place and the lacerations sutured. He stated that plaintiff was seen at his office at various intervals and that her recovery was uneventful. His prognosis was that she would have scarring of tissue under the upper lip and that there was an "outside chance" that she could lose the vitality of the two central incisors (teeth). In his report of May 19, 1961, some four months after the accident, Dr. Coffee stated that the teeth appeared to be normal, with no discoloration or mobility but there was a possibility that these teeth could loose their vitality, and that the lacerations of gum tissue and oral mucosa had healed, as well as tenderness in the area and some numbness. Dr. Coffee stated that this tenderness and numbness may last as long as a year and that it was possible for teeth to lose their vitality three or four years after a blow.
Dr. Howard Hansen's report of February 20, 1961, stated that he had examined plaintiff on January 4, 1961, and indicated essentially the same findings as those of Dr. Coffee. Additionally, he found that plaintiff had a contused right knee which was swollen and ecchymotic. Dr. Hansen stated x-ray examinations of the right knee revealed no fractures nor bone pathology. She was re-examined on January 6, 1961, advised of the x-ray findings of her knee and given a prescription for 24 Orenzyme tablets, to take one four times daily. She was given no medication for the relief of pain.
Plaintiff, Mrs. Newman, testified that the pain in her mouth lasted for approximately a month after the accident, and at the time of the trial, some ten months after the accident, she still had a very uncomfortable feeling in her mouth.
Although we are cognizant of the cases cited by counsel for plaintiff wherein the court made awards for future medical expenses, it is clear that plaintiff in the instant case has failed to prove, with reasonable certainty, future medical expenses. The only evidence in the record tending to establish future medical expenses is a statement in Dr. Coffee's reports that plaintiff's teeth may possibly lose their vitality. This we feel is insufficient to establish this as an item of damages.
As to the quantum for physical pain and suffering and mental anguish past and *675 future, it is our opinion that an award of $3000.00 would do substantial justice between the parties.
For the reasons above assigned the judgment in suit Number 5701, Sam Newman et al. v. Eugene M. Bailey et al., is reversed and it is hereby ordered, adjudged and decreed that there be judgment herein in favor of Claude Morgan for the sum of $100.00; in favor of National Surety Corporation in the sum of $291.04; in favor of Sam Newman in the sum of $133.84; in favor of Gloria Blaylock Newman in the sum of $3,000.00 and against defendants, Eugene M. Bailey and State Farm Mutual Automobile Insurance Company, jointly and in solido. The cost of this appeal to be paid by defendants, Eugene M. Bailey and State Farm Mutual Automobile Insurance Company.
Affirmed in part and reversed in part.
HERGET, J., not participating.