LOTTINGER, Judge.
This matter is before us on appeal from a judgment rendered in connection with a tort action which arose as a result of an automobile accident which occurred on March 31, 1964, on Highway 51 about one and one-half miles north of LaPlace, Louisiana. The record reflects that on that date at approximately 5:25 o’clock P.M. Moses Charleston, one of the defendants herein, was driving his 1963 Ford half-ton pickup truck in a northerly direction on Highway 51 coming from New Orleans and going to Hammond, Louisiana. The rear of Charleston’s pickup truck was covered with a plywood housing or compartment with crossed benches, and covered on top, a device intended to permit the carrying of passengers in the rear of the truck and afford them some protection from the elements. On the date of the accident, there were 11 people in tire Charleston truck, with Charleston and two of the passengers riding in the cab, and the remaining 8 persons seated on the benches in the rear of the truck.
The accident happened almost opposite an establishment known as the “Half-Way House”, which is apparently a small bar and *111 restaurant located on the east or right hand side of the highway in the direction of travel of the Charleston truck. The roadway at this point is composed of two lanes of travel and is approximately 20 feet in width. The speed limit in this area was, at the time of the accident, 60 miles per hour. As the Charleston truck approached the Half-Way House, there were two vehicles parked in front of the Half-Way House both parked on the east side of and parallel to the highway. The southernmost, or closest of the two vehicles to the Charleston truck as it approached, was a black 1956 Chevrolet, the left side of which was partially on the highway by approximately 12 inches. The northernmost of the two vehicles was a 1964 yellow Chevrolet sedan which was parked about 7 or 8 feet from the edge of the highway.
As Charleston approached the Half-Way House and the two vehicles parked along the highway in front of this establishment, he noticed a woman later identified as Mrs. Rodgers and two men alight from the yellow Chevrolet, and saw them walking toward the Half-Way House. When the Charleston truck reached a point approximately 2 feet from the rear bumper of the black Chevrolet, Mrs. Rodgers suddenly darted out from behind the front of this black Chevrolet automobile and commenced running across the road from the east side to the west side. Charleston saw her emerge from behind the vehicle, immediately turned his truck sharply to the left in an attempt to avoid hitting the woman, went almost completely into the left or south bound lane, and there either struck the woman with the right side of his truck midway between the fender and the door or was struck at that point by the woman running into the side of the truck. Charleston looked in the rear view mirror after the impact of Mrs. Rodgers with the truck, saw her “spinning” in approximately the middle of the highway, looked up and saw a large trailer truck coming toward him in the south bound lane headed south, immediately sharply turned his truck back to the right in an effort to get into his own proper right hand lane of traffic so as to avoid the oncoming truck, and in so doing lost control of the truck. Thereafter, the Charleston vehicle continued across to the east or north bound lane of traffic and at some point in the east lane or on the east shoulder overturned and continued down into a steep embankment which paralleled the east lane of traffic.
As a result of the accident, Mrs. Rodgers, the pedestrian, was killed, and the plaintiff, who was a passenger in the rear of the Charleston truck allegedly suffered personal injury. She and her husband thereafter instituted this suit, naming as defendants, Moses Charleston, the driver of the truck, and Fidelity & Casualty Company of New York, his public liability insurer. After a trial on the merits, the Trial Judge rendered judgment in favor of the plaintiff, Geneva Smith, in the amount of $3,500.00 and in favor of her husband, Johnny Smith, in the amount of $1,199.00. It is from this judgment that the defendants have sus-pensively appealed to this Court.
The appellants assign only one error on the part of the Trial Court, and that is that the Court erred in finding that any portion of the testimony in the record indicated actionable negligence on the part of Moses Charleston by reason of the fact that the facts of the case are governed by the “sudden emergency doctrine”.
The testimony of Moses Charleston, Inez George, and Gladys George, the latter two of whom were riding in the cab of the Charleston truck with the driver and who were the only eye witnesses to the accident, who testified at the time of the trial, indicates that the accident happened precisely in the manner set out hereinabove. The plaintiff, Geneva Smith, and the other seven passengers who were riding in the rear of the truck did not actually see tire accident happen, although several of them testified that they felt the truck swerve to the left, and one of them, who was facing the rear of the truck, testified that the truck *112 crossed the center line of the highway entirely and that he saw Mrs. Rodgers standing in the middle of the highway “spinning” before she fell. We therefore find no dispute as to the facts surrounding the accident.
Charleston’s testimony and that of the other two witnesses who rode in the cab with him is to the effect that he approached the Half-Way House at a speed of about 35 to 40 miles per hour. Charleston testified that as he approached the Half-Way House, he slowed down even further, and that as the Rodgers woman ran in front of his truck, he applied his brakes at the same time that he swung to the left in an effort to avoid hitting her, and indicated that he continued applying his brakes even as he attempted to cut hack into the right hand lane of traffic. Taking the testimony of the eye witnesses to the accident as well as that of the passengers in the truck as a whole, we believe that the record clearly shows that Charleston was, without warning, faced with a sudden emergency not of his own making. Confronted with this emergency, Charleston instinctively reacted in veering his truck into the left hand lane of traffic in an attempt to avoid striking the person who actually created the emergency, Mrs. Rodgers. Certainly we cannot detect any negligence in this maneuver. Next, Charleston looked ahead and saw a large truck bearing down upon him in its own proper lane of traffic, and he again reacted instinctively and attempted to get back into his own proper right hand lane of traffic and thus avoid the imminent collision with the oncoming truck. The fact that in executing this maneuver of returning to his own lane of traffic Charleston lost control of his vehicle, thus precipitating the overturning of his truck, does not, under the circumstances, evidence to us any negligence on the part of Charleston.
The courts of this State have in other situations involving sudden emergencies where the defendant has not made the best judgment, concluded that the defendant was not guilty of negligence for the fact alone that he made a mistake in the method adopted to escape a peril which existed not through his fault, but through the negligence of another. We believe that clearly the sole proximate cause of this accident was the negligence of Mrs. Rodgers, the deceased pedestrian, in suddenly, and without warning, running onto the highway in the path of the Charleston truck from behind a parked automobile.
In summarizing, we feel that the action of Mrs. Rodgers in running onto the highway from behind a parked automobile into the path of the Charleston vehicle, created a sudden emergency wherein Charleston reacted as a reasonably prudent person would have reacted, presented with such a sudden emergency, by veering into his left lane of traffic in an attempt to avoid striking her, and in thereafter, when confronted with an oncoming truck, cutting sharply back into his own right hand lane of traffic in an attempt to avoid the imminent collision with that truck. Vordenbaumen v. Sweeney, La.App., 169 So.2d 165 (1964), Bailey v. National Surety Corporation, La.App., 149 So.2d 669 (1963).
Accordingly, for these reasons, the judgment of the District Court is reversed, and the plaintiffs’ suit is dismissed at their cost.
Judgment reversed.