ELLIS, Judge.
Plaintiff, Motors Insurance Corporation, the collision insurer of Bailey Miles, brought this suit against Marquette Casualty Company, the liability insurer of, and Mrs. Myrtle B. Carson, seeking to recover $1,051.80 which amount represents the value of the 1960 half ton pickup truck insured by the plaintiff against collision damage, less its salvage value and policy deductible.
After trial, the. lower court rendered judgment dismissing the suit at plaintiff’s cost and the plaintiff has appealed.
The accident occurred January 17, 1962 on Louisiana Highway No. 37 in St. Helena Parish. No adverse weather or road conditions were involved. The truck, being driven by Bailey Miles, and a 1959 Studebaker, being driven by Myrtle B. Carson, were both traveling east, the truck in the lead.
Mrs. Carson, the only survivor of the accident, testified she “slowed down” to pass the truck and blew her horn before attempting this maneuver. When she was opposite the truck it began to pull left into the passing lane. Mrs. Carson blew her horn again and moved to the left, even onto the shoulder of the road, and the truck began to drop back. However, the left front fender of the truck and the right rear fender of the Studebaker collided and locked. The vehicles traveled together, leaving the road on the right side of the highway. The Studebaker came to rest in the ditch and the truck against a large pine tree.
*48 The plaintiff, of course, disputes the testimony of Mrs. Carson, but is unable to produce any eye witness which would tend to contradict it. for the reason there were no eye witnesses to the tragedy and both occupants of the truck died as a result of the accident.
The plaintiff does, however, cite three undisputed physical facts. The first of these is that the rear, fender of the Studebaker was bent back, indicating a greater forward speed on the part of the Studebaker than on the part of the truck.
The second fact is the presence of a single black tire mark beginning near the center of the road, .but within the right or east bound lane.
The third is the fact both cars left the road on the right side of the highway rather than on the left, indicating that while locked together, the vehicles were veering to the right and not to the left.
It is well established that a single interested witness, when not contradicted by other testimony or facts known to be true, is sufficient to establish a preponderance of the evidence. Marks v. New Orleans Cold Storage Company, 107 La. 172, 31 So. 671, 57 L.R.A. 271. In this case it is necessary, therefore, to determine whether or not the physical evidence contradicts the oral testimony of Mrs. Carson. In the opinion of this court the two are irreconcilable.
The fact that the rear fender of the Studebaker was bent back cannot be reconciled with Mrs. Carson’s statement that when contact was first made, she felt her car being pushed and the initial contact made her car go faster. Obviously a blow from the side or back by a vehicle traveling at a greater speed, necessary to accelerate the Studebaker, would have bent the fender in and not pulled it back. This is certainly consistent with the theory of plaintiff’s case that Mrs. Carson attempted to re-enter the east bound lane too soon after passing the truck and thereby caused the accident. We must admit, however, this is not conclusive, as it is possible the Studebaker fender was bent back upon separation of the locked vehicles.
The second physical fact mentioned above is very impressive. No physical evidence of any collision was found left of the center line but physical evidence was found to the right of the center line, indicating the initial impact occurred to the right of the center line in the east bound lane of traffic. Counsel for the defendant argues there is no evidence to show the black mark was caused by the vehicles in question or that it marks the point of initial impact. The defendant argues the vehicles, after they became locked together in the left lane of traffic, traveled out of control a short distance into the right lane, made a mark on the black top, and eventually left the road on the right side. This argument is not supported by a careful examination of two pictures introduced by the plaintiff and marked as “P. 1” and “P. 2.” for identification. The picture was taken from a point on the highway looking toward the direction in which the vehicles traveled and finally halted. This photograph clearly indicates a rather long tire mark apparently commencing near the center line but entirely within the east bound lane of traffic and angling toward the right side of the road. It is not an isolated tire mark from which no valid conclusion can be drawn, but a fact which clearly indicates the point of impact and direction of travel. There is no reason to believe, as argued by counsel for defendant, that the vehicles collided in the left or passing lane without leaving any evidence of this, traveled into the right lane and there caused the tire mark.
The second photograph introduced by the plaintiff is taken from approximately the same angle but from a point much nearer the final resting place of the vehicles. The investigating officer, drew the tire marks on this picture and testified they were present on the ground but did not show up well in his photograph. These marks indicate after the vehicles left the road they con *49 tinued to travel in approximately the same direction as while on the road until .reaching a telephone pole on the south side of the ditch. At that point the Studebaker veered hack toward the road and landed in the ditch, while the truck continued along its same path.
It is evident from the rather long skid mark on the highway in the direction the vehicles must have been traveling in order to come to rest where they did that the mark was not an isolated mark and it indicates the point of impact as well as the path of travel.
The third physical fact, that the vehicles actually left the road on the right side, certainly conflicts with Mrs. Carson’s testimony she had cut to her left and had actually gone on the left shoulder of the road in an effort to avoid the truck which was likewise cutting to the left. If the collision had occurred at this point and in this manner the vehicles would obviously have abandoned the road on the left side rather than on the right, as both vehicles would have been headed in that direction. Indeed, the Studebaker would have already been on the shoulder at the left of the road, there was no physical indication or evidence the impact occurred on the left side of the road or on the left shoulder.
The plaintiff must always establish his case by a preponderance of the evidence. In the case of Noland v. Liberty Mutual Insurance Company, 232 La. 569, 94 So.2d 671, the Supreme Court held once it is established a collision occurred while a vehicle is in the wrong lane of traffic, the presumption is that the driver of such vehicle was negligent and the burden of proof is upon him to show the accident was not caused by his negligence.
In this case, as the accident occurred in the east bound lane of traffic, Mrs. Carson was in the wrong lane as she should have been in the passing lane. The defendants have failed to meet the burden of proof placed on them by the Noland case.
Therefore, the decision of the trial court dismissing this suit at plaintiff’s costs must be reversed and judgment rendered herein in favor of the plaintiff and against the defendants in the amount of $1051.80, which amount was stipulated to between the parties as the correct amount of damages.
Reversed.