ELLIS, Judge.
Plaintiff has appealed from a judgment dismissing his suit which he filed for damages for personal injuries as a result of an automobile collision on October 8, 1961 with a car being driven by the defendant, Howard D. Nixon.
While the facts are somewhat in dispute, we believe the record clearly establishes the negligence of the defendant Nixon as the proximate cause of the automobile collision which occurred at approximately 6:45 on October 8, 1961, at which time it was dark, when the defendant’s car came over the center line of the blacktopped road and sideswiped the plaintiff’s car, which was traveling in a westerly direction while defendant’s car was going in an easterly direction. The collision occurred in a curve of the road and it is the testimony of Cutrer and his two guest passengers that the defendant’s automobile approached them with one light burning, came over the center line in the curve and struck their car all the way down its left side; that the defendant did not stop but later returned to the scene of the accident; also, that Cutrer attempted tc pull to his right but failed to avoid a collision and his automobile stopped a reasonable distance down the highway on the shoulder of the road. In support of this version is the testimony of the officer who investigated the accident very soon after it happened and who stated that the debris was scattered along the center line but the main impact appeared to be over in the plaintiff’s lane of travel slightly on his side of the center line. Furthermore, he also testified defendant had been drinking, which was confirmed by the recognized test given to the defendant that night. The defendant also admitted having plead guilty to “driving on the wrong side of the road * * * ”. His reason for this was given in his testimony that “I was advised by legal counsel inasmuch as my time element was involved to plead guilty to driving on the wrong side of the road, pay the fine so that I could go back to work.”
Also testifying on behalf of the plaintiff were two young ladies whom he had as-guest passengers at the time of the accident.. Later he married one who at the time of the trial had been divorced from him and remarried. The other guest was her younger sister. Both testified that they saw defendant’s car approaching them from the west with one light burning, that it came over the center line and sideswiped the automobile *695 in which they were riding, despite the fact that plaintiff attempted to avoid the collision by pulling to his right. Neither of these parties was injured nor has either filed suit.
The defendant testified that he thought both cars were on the center line at the time of collision hut admits he could have been slightly over the center line. Defendant, as well as his wife, testified that both his lights were burning; however, there is no other proof of this fact. The defendant denied drinking anything but one beer somewhere near Natchez. This could be true but the test showed he was within a few tenths of a point of being in such a condition that it would not have been necessary to have had any other testimony to have obtained a conviction. His excuse for not stopping after knowing he had “bumped” or struck plaintiff’s automobile was that he thought it best to take his wife and baby on home. He did come back and testified without any hesitation on the trial of the case.
Apparently both cars were proceeding within the speed limit. The plaintiff’s car was old and the estimates of damage show beyond repair. In other words, it would cost more to repair the old car than its value. We are not concerned with any claim for property damages in this suit.
Since the instant collision occurred while defendant’s automobile was in the wrong traffic lane, the presumption is that he, defendant, was negligent in the operation of his vehicle. It, therefore, follows under the law that the burden is upon him to show that the accident was not caused by his negligence, or that there were justifiable circumstances which would excuse his conduct. Daigle v. Hardware Dealers Mutual Fire Insurance Company, La.App., 165 So. 2d 643, Motors Insurance Corporation v. Marquette Casualty Company, La.App., 162 So.2d 47, Cormier v. Southern Farm Bureau Casualty Insurance Company, La.App., 94 So.2d 901, Mershon v. Cutrer, 232 La. 666, 95 So.2d 143, Noland v. Liberty Mutual Insurance Company, 232 La. 569, 94 So.2d 671, Miller v. Hayes, La.App., 29 So.2d 396.
The defendant, having completely failed to carry the legal burden of proof required under such facts, must be adjudged guilty of negligence which was the proximate cause of this accident.
We will next consider the question of quantum. Immediately after the accident on October 8, 1961, no one thought plaintiff had been injured. However, on October 10 the plaintiff went to see Dr. A. F. Sanders in Baton Rouge, Louisiana, and testified he had sustained a back injury and whiplash of “my neck and my back was all stove up on me and also I got a bump on my right leg where it hit the corner of the air conditioning.” Dr. Sanders sent him to Our Lady of the Lake Hospital where X-rays were made and he was treated as an outpatient. He further testified the doctor told him he had a slipped disc which he had suffered as a result of the accident. Dr. Sanders in his testimony positively denied he had told him he had such an injury. On October 11, he went back to Dr. Sanders’ office and again on October 13. The doctor’s charges for these visits were $18.00 as shown by bills introduced in the record. Also introduced were bills from Our Lady of the Lake Hospital in the amount of $80.00 for plaintiff and $10.00 for Dorothy Price, one of the guest passengers in his car at the time of the accident. Also introduced is a disability certificate dated October 11, 1961, certifying that Charles Cutrer “has been under my professional care and was totally incapacitated from 10-8-61 to 10-15-61” ■ and under the heading of “Remarks” is written “Should refrain from heavy lifting” and this certificate is signed “Dr. A. F. Sanders”. The plaintiff testified he made approximately seven or eight visits to Dr..A. F. Sanders; however, the only bill introduced shows four visits — two on October 11, one on October 10 and one on October 13, 1961. At the time of the trial he testified he was bothered by his back when there was a *696 change of weather or if he did any heavy lifting or real strenuous work, but that his neck did not bother him and that he had recovered from the effects of the alleged whiplash injury. He did complain that the lower part of his back still bothered him and that he had never had any such trouble prior to the accident. Plaintiff testified the only treatment he had was bed rest at home and putting heat lamp and compresses on his back. There is no positive proof he actually lost any wages due to the accident.
There is testimony by Dr. McVea, who examined plaintiff, that based completely upon his statements he would judge the plaintiff had suffered a muscular strain as a result of the accident, however, he could find no objective symptoms at the time of his examination of the plaintiff on December IS, 1961 to substantiate the complaints that plaintiff’s left shoulder and back continued to hurt him. He examined two sets of X-rays which were made at Our Lady of the Lake Hospital within a few days after the accident and could find nothing of significance revealed by these X-rays.
Dr. Sanders, whose testimony was taken by deposition by agreement, testified that on October 10 he examined the plaintiff who complained at that time of pain across the shoulder, the lower back, cramps in the legs and pain in the neck, and also of nausea and generalized soreness, as a result of the accident on October 8. His physical examination at that time revealed no abnormal physical findings, the reflexes and sensory findings relating to his complaints were normal and “I sent him for x-rays at the Lady of the Lake Hospital X-ray Department.” His cervical spine and lumbar spine were X-rayed and there was no evidence of fracture or dislocation of the cervical spine. “It revealed an old ununited chip fracture or an ununited ossification center adjacent to the tip of the spinous process of the first dorsal vertebra. The x-ray of the lower back or of the lumbar spine showed defects in the pars interarticu-lar 1^5 fifth lumbar vertebra on both ^ides. The pars interarticular forms part of the articulation of the spinal bones and was also a first — second degree spondylolis-thesis of L-5 on S-l. Those were the only significant findings on x-rays of the lumbar spine.” Dr. Sanders prescribed common aspirin, heat and rest and by heat, he meant a heating pad. Dr. Sanders testified he saw plaintiff the last time on January 31, 1962 and he was still complaining of pain in the lower back following lifting, bending or backward movement of the back. Dr. Sanders did advise him when he initially treated him to do no heavy lifting, stooping or bending. It was Dr. Sanders’ opinion that “if his complaints of pain which are subjective, are taken for granted, they were due to muscle strain. We never know; we have to take his word for it that his back hurts. Then I would think that he had acute cervical and lumbar muscle strain superimposed on congenital defects of the back. 0 That is my opinion now; whether I’m correct or not I don’t know.” He explained this diagnosis “superimposed” stating that “ * * * the x-rays of the back taken when I first saw him were not normal; particularly the lower back. He had defects in the bone formation which are not related to trauma, and he had malalignment of the bones of the lower back that are frequently associated with these congenital defects. This spondylolis-thesis — however, it is impossible for this spondylolisthesis which is no more than a malalignment of the bone of the back, to be caused by trauma. So I don’t know whether his malalignment was due to trauma or whether it was due to this congenital defect that was present.” Dr. Sanders positively ruled out any dislocated vertebra or disc or that he had told the plaintiff that he had such a condition because he stated he “would have had positive neurological findings with other typical characteristics which he does not have.” On direct examination the doctor was asked the following question and gave the following answer:
“Q. Is that what you attribute his condition to (automobile accident) *697 after your taking of the history and diagnosis?
■“A. I wasn’t sure that there was anything wrong with him. I mean if he had trouble then I would attribute it to that, yes, sir.”
Dr. Sanders testified positively that plaintiff had no objective evidence, only subjective evidence of spasm and there was no x-ray evidence of muscle spasm. He also found no definite area of pain.
Plaintiff has failed to prove any serious injury and at the most a muscular strain for which he received a disability certificate for a period of one week from his physician. There were absolutely no objective symptoms revealed by the X-rays or the physical examinations of Dr. McVea or Dr. Sanders attributable to the accident. Furthermore, we find no evidence of any great degree of pain and suffering as the only treatment prescribed by his physician who only saw him on approximately five occasions was aspirin, heat, and rest. We believe $500.00 would be adequate under the facts and circumstances of this case. He is also entitled to judgment for the $80.00 hospital bill due for services at Our Lady of the Lake Hospital in Baton Rouge and $18.00 as shown by the statement of Dr. Sanders introduced in evidence which were charges for the office visits. There is also a bill from Dr. Sanders for Dorothy Price whom plaintiff later married, but there is no suit by her and he cannot recover this amount.
It is therefore ordered, adjudged and decreed that the judgment of the District Court be reversed, annulled and set aside and it is now ordered that there be judgment in favor of Charles L. Cutrer and against The Travelers Indemnity Company and Howard D. Nixon, severally and in solido in the just and full sum of $500.00 and the additional sum of $98.00 for hospital and doctor bills, together with legal interest from judicial demand on the total sum herein awarded and all costs of court.
Reversed.